[Civ. No. 24984. Second Dist., Div. Three. Aug. 18, 1961.]

FRED RIVLIN, Respondent, v. ARTHUR·LEVINE et al., Appellants.

Miller, Vandegrift, Middleton & Sackin and Thomas J. Middleton for Appellants.

Nathan Packler and Arthur Magid for Respondent.

FORD, J.—The plaintiff obtained a judgment against the defendants Arthur Levine and Laurelvale Construction Corporation, a corporation, for the sum of $22,000, together with

interest from May 1, 1956, "the date of payment of said sum by Plaintiff's Assignors unto Defendants for a void security." The defendants have appealed from the judgment, their principal contention being that the evidence is insufficient to support the determination of liability.

Extensive findings of fact were made. Portions thereof are as follows: 1. On or about April 5, 1956, the defendant Laurelvale Construction Corporation entered into an agreement in the form of escrow instructions for the purchase of a tract of land in the county of Fresno for a purchase price of $320,000, of which $62,150 was payable in cash and the remaining amount was to be evidenced by notes secured by deeds of trust; the escrow instructions were executed on behalf of the buyer by Duane R. Armsbury and by defendant Arthur Levine as president and secretary, respectively, of the corporation; the property was to be used in the development of a residential subdivision; some time before April 5, 1956, the defendant Levine and Armsbury acquired all of the issued and outstanding shares of stock of the defendant corporation; they became officers and directors thereof; neither such officers nor the corporation had sufficient funds with which to consummate the purchase of the real property; the corporation did not have any working capital to enable it to construct single-family dwellings on that property. 2. Some time before the first of April, 1956, the defendants Levine and the corporation, knowing such financial situation, prepared a "Building Development Prospectus" which set forth generally the plan of development and which contained the following statement: "There is an anticipated net profit of $927.00 per house or a total of $123,825.00"; further statements therein were: "Said company will require $75,000.00 to proceed with this Fresno project. The investors will receive 45% of the profit and his investment will be returned before the builder participates in any profit. . . . The proposed mechanics of this deal are that the investor become a limited partner in the Laurelvale Construction Corp." 3. The plaintiff and others were "Joint Venturers under the name of Fred Rivlin Investment Ventures; the business thereof being the investing of their funds." 4. The defendant Levine had known the plaintiff and some of his associates for many years; in the latter part of April, 1956, Levine approached the plaintiff Rivlin for the purpose of having Rivlin and his associates invest money in the undertaking; the prospectus was read to the plaintiff Rivlin and his associates; Levine represented to them that the defendant

16

corporation needed $75,000 to complete the project, that if the plaintiff and his associates would invest $22,000, he, Levine, would be able to obtain the rest of the money required, and that the project "would be handled through a limited partnership and the profits divided fifty-fifty"; thereafter, on May 1, 1956, Levine represented to plaintiff that he would raise the difference between $22,000 and $75,000 or, if necessary, invest the amount himself, and that if the plaintiff and his associates "first contributed and signed, he, Levine, would be able to raise the rest of the money"; on May 1, 1956, the plaintiff on behalf of Fred Rivlin Investment Ventures, a joint venture, gave to Levine the sum of $22,000 and obtained a receipt signed by Levine as "V. P. and Secretary," the body of the receipt containing the following statement: "Received of Fred Rivlin Investment Ventures Twenty-Two Thousand and 00/100 Dollars for investment Laurelvale Ranches"; the property being purchased was known as Laurelvale Ranches; Levine signed the receipt as an officer of the defendant corporation. 5. A certificate of limited partnership of "Vale Investment" bearing the date of April 27, 1956, was signed by the defendant corporation "by Armsbury and Levine as General Partners and by the purported Limited Partners, including Fred Rivlin Investment Ventures by Fred Rivlin"; the certificate was verified by Armsbury on January 16, 1957, by Levine on January 17, 1957, by four other persons on April 27, 1956; by Rivlin, individually, Pioneer Associates, Inc., and Cecil Bender on May 1, 1956; "the acknowledgment of the signature of Cecil Bender" is dated June 6, 1956; neither the execution by the defendant corporation "nor by any of the other purported Limited Partners was at any time acknowledged, notwithstanding the provisions of Section 15502 Corporations Code, as in effect in 1956." 6. The present action was filed on January 17, 1957. 7. The document entitled "Certificate of Limited Partnership of Vale Investment" was "filed in the office of the County Recorder of Fresno County on or about February 15, 1957 (Exhibit B), and was recorded in the office of the County Recorder of Fresno County on June 17, 1957";[1] the body of the certificate does not give the name and address of the general partner; attached to the

[1]This finding appears to contain clerical errors. Exhibit B shows that it was recorded by the county recorder of Fresno County on January 17, 1957. Exhibit A, which is entitled "Certificate of Limited Partnership of Vale Investment," bears the filing stamp of the county clerk of Fresno County containing the date of February 15, 1957.

certificate is a document designated as Exhibit ''A'' which contains the names, addresses and amounts of initial contributions of various persons, but such exhibit ''was completed by the typing therein of said names, addresses and amounts and affixing to the Certificate after the Certificate had been signed'';[2] neither the plaintiff nor any of his associates ever received a copy of the certificate; they did not see the certificate ''with Exhibit 'A' completed and attached thereto.'' 8. Neither of the defendants ever disclosed to the plaintiff or his associates that the total amount contributed was only the sum of $55,500, and not $75,000, until after the foreclosure of the trust deed on the property and the consequent loss of such property. 9. ''No certificate of Business (Fictitious Firm Name) of 'Vale' was ever filed or published''; no ''Statement

---

[2]The body of the certificate (Exhibit B), together with the signatures thereto, and Exhibit ''A'' attached thereto are as follows:

''We, the undersigned, do hereby associate ourselves together as partners under the provisions of the Corporations Code of the State of California relating to limited partnerships, and hereby certify as follows:

I.

''The name of the limited partnership is VALE INVESTMENT.

II.

''The character of its business is the subdividing, improving, and selling of real property.

III.

''The location of the principal place of business of said limited partnership is 949 N. Villa Avenue, Fresno, California.

IV.

''The name and address of each member and the designation of which is the General Partner and which are the Limited Partners, are set forth on Exhibit 'A', attached hereto and by this reference made a part hereof.

V.

''The limited partnership shall commence as of the date of this instrument and shall continue thereafter for an indefinite period unless sooner terminated by the mutual consent of all partners.

VI.

''The contributions of the Limited Partners are in cash and the amounts thereof are set forth after the respective names of the Limited Partners on said Exhibit 'A', attached hereto and made a part hereof.

VII.

''The Limited Partners are not obligated to make any further contributions.

VIII.

''At the date of termination of the partnership or as soon thereafter as the accounts of the partnership .are closed, the contributions of the Limited Partners shall be returned to them.

IX.

''That the share of the profits of the limited partnership which the Limited Partners shall receive is fifty percent thereof, and each Limited

of Partnership of Vale, in accordance with Section 15010.5 of the Corporations Code . . . was ever executed or recorded"; no "bank account of Vale was ever opened"; Vale as a partnership never did anything; Vale never procured a contractor's license; certain purported escrow instructions were signed by the investors but not for or on behalf of Vale and not by the defendant corporation; such instructions were not used by the defendants or filed with the escrow holder, one reason being that the defendants "never procured investors in excess of $55,000.00 and were not therefore in a position to deliver and pay $62,150.00 to the Escrow Holder"; under date of May 8, 1956, the defendant corporation amended the existing escrow instructions in several particulars, one part

Partner shall receive that portion of said percentage as his initial contribution bears to the total of the contributions of the Limited Partners.

X.

"That there are no provisions giving a Limited Partner a right to substitute an assignee as contributor in his place.

XI.

"That there are no rights given nor provisions made for the admission of additional limited partners.

"IN WITNESS WHEREOF, we, the undersigned, have signed, sealed, and sworn to and acknowledged this certificate on the 27th day of April, 1956.

GENERAL PARTNER:

LAURELVALE CONSTRUCTION CORP.,
a California corporation

S/ By Duane R. Armsbury

S/ By Arthur Levine

LIMITED PARTNERS:

S/ James B. Greer
T. R. Landau
McDonald W. Scott
Pearl Levine
Fred Rivlin Investment Ventures By Fred Rivlin
Pioneer Associates, Inc. By Joseph E. Lessin
Cecil Bender''

"EXHIBIT 'A'

| NAME | ADDRESS | INITIAL CONTRIBUTION |
|---|---|---|
| James B. Greer | 2367 Midvale Ave., Los Angeles 64, | $ 7,500.00 |
| T. R. Landau | 4453 Don Zarembo Dr., L. A. 8, | $ 7,500.00 |
| McDonald W. Scott | 2590 Dearborn Dr., Los Angeles 28, | $ 5,000.00 |
| Pearl Levine | 1427 Livonia Ave., Los Angeles 35, | $ 5,000.00 |
| Fred Rivlin Investment Ventures | 1127 S. Windsor Blvd., L. A. 19, | $22,000.00 |
| Pioneer Associates | 608 S. Hill Street, Los Angeles 14, | $ 7,500.00 |
| Cecil Bender | 3047 Vineyard Ave., L. A. 16, | $ 5,000.00'' |

being the change of the amount of cash to be paid through escrow from $62,150 to $54,500; other amendments were made from time to time; all escrow instructions and amendments thereto were executed by the defendant corporation alone, "without disclosure either of any purported Limited Partnership or the interest of any of the Investors," or that the defendant corporation was acting or purporting to act on behalf of any partnership, limited or general; the escrow was closed on or about August 9, 1956, and title to the property was vested in the defendant corporation. 10. A document entitled "Limited Partnership Agreement" (Exhibit E) was signed on behalf of Fred Rivlin Investment Ventures, as well as by particular individuals, but not by the defendant corporation; none of "the purported limited partners ever received any copy or original thereof"; it was not signed in April 1956; "none of the objects and purposes set forth therein were ever engaged in or performed"; "the said purported Limited Partnership Agreement was never executed and never became effective or binding upon the parties thereto." 11. The sum of $55,000 received by the defendants from investors, including the plaintiff's assignors, was deposited in the escrow to the credit of the defendant corporation, but the money was lost when the holder of the notes secured by the first deed of trust on the property caused such deed of trust to be foreclosed before the partnership engaged in any activity other than the deposit of the money in escrow; thereafter, the defendant corporation brought an action against those with whom it had dealt in the purchase of the property and obtained a judgment by default on September 23, 1958, for the sum of $59,500; in that judgment a certain promissory note executed by the defendant corporation was declared to be null and void; in that action, the defendant corporation sued in its own behalf and no interest of the "purported Limited Partnership" was disclosed. 12. Neither the defendant corporation nor the defendant Levine secured any permit from the Commissioner of Corporations either for the solicitation of funds from the investors or for the issuance of "the purported Certificate of Limited Partnership of Vale"; "the preparation of and purported execution of the Limited Partnership Certificate (Exhibit B) was a subterfuge to evade the requirements of the Corporate Securities Law."

It is the position of the plaintiff that the nature of the transaction initiated by Levine was such that it was not exempt from a statutory requirement that a permit be obtained from

the Commissioner of Corporations. Under section 25003, subdivision (a), of the Corporations Code, the word "company" includes partnerships of every kind. In section 25008, subdivision (a), of that code, "security" is defined as including any "beneficial interest in title to property, profits, or earnings." By the provisions of section 25500 the sale by any company of any security of its own issue without a permit from the Commissioner of Corporations is prohibited. Section 26100 is in part as follows: "Every security of its own issue sold or issued by any company without a permit of the commissioner then in effect authorizing the issuance or sale of the security is void." In section 25100 of the Corporations Code certain exemptions are stated; that section is in part as follows: "Except as otherwise expressly provided in this division, the Corporate Securities Law does not apply to any of the following classes of securities: . . . (l) Any partnership interest in a general partnership, or in a limited partnership where certificates are executed, filed, and recorded as provided by Sections 15502 and 15525 of the Corporations Code of the State of California, except partnership interests when offered to the public." An exhaustive discussion of the law with respect to the application of such provisions to partnerships is found in *Farnsworth* v. *Nevada-Cal Management, Ltd.,* 188 Cal.App.2d 382 [10 Cal.Rptr. 531], in which it was held that interests in the partnership therein involved did not constitute securities within the purview of the statute. However, in the case now before this court the trial court determined that the nature of the transaction was such as to constitute a subterfuge and a violation of the law with respect to the issuance of securities in the absence of a permit. Therefore, the question presented is whether such determination finds support in the evidence and the applicable law. In reviewing the evidence, this court is, of course, limited to a determination of whether there is substantial evidence to support the findings of fact of the trial court. (*Stoner* v. *Bisno,* 162 Cal. App.2d 164, 171 [327 P.2d 922].)

"It is established that in this area of the law, form must yield to substance; that the courts must look through the outward appearance of transactions claimed to violate the law and render judgment in accordance with the actualities of the matter." (*Farnsworth* v. *Nevada-Cal Management, Ltd., supra,* 188 Cal.App.2d 382, at p. 388.) In *Oil Lease Service, Inc.* v. *Stephenson,* 162 Cal.App.2d 100 [327 P.2d 628], the court stated, at page 108: "The determination

of its true character requires an inquiry which goes beyond the mere name of the instrument or the nature of the interest conveyed. (*Moore* v. *Stella*, 52 Cal.App.2d 766 [127 P.2d 300].) ▮ Whether a particular instrument is to be considered a security within the meaning of the statute is a question to be determined in each case. (*People* v. *Rankin*, 160 Cal.App.2d 93 [325 P.2d 10]; *People* v. *Syde*, 37 Cal.2d 765 [235 P.2d 601].)''

Guidance in the consideration of whether there is substantial support in the evidence for the determination of the trial court that there was not a bona fide limited partnership is found in Dahlquist, *Regulation and Civil Liability Under the California Corporate Securities Act*, 33 Cal.L.Rev. 343, wherein it is said at page 363: ''It is believed that one of the chief criteria for determining whether an interest in a partnership is a 'security' under the Act is the element of selection of the partners. In all general partnerships, and also in *bona fide* limited partnerships, there is the right of *delectus personarum*, the right to determine membership. No partner is admitted without unanimous approval of every other partner. A true partnership is a relation of personal confidence and is a select closed group. Its memberships are never indiscriminately offered at random to the public at large. Even in the case of a limited partnership the certificate must expressly state the right, if given, of a limited partner to substitute an assignee as contributor in his place, and the terms and conditions of the substitution, and the right, if given, of the partners to admit additional partners. In either such case the certificate must be amended and signed and sworn to by all partners, including any member to be substituted or added, and when a limited partner is to be substituted, also by the assigning limited partner.

''Limited partnerships are creatures of statute requiring formal statutory compliance. They do not readily lend themselves to bold and dishonest schemes whereby capital is raised to carry out a venture by indiscriminate solicitation of the public at large. As long as the requirement of unanimous agreement on the body of membership is preserved it would appear clear that the partnership is not an issuer of a 'security.' ''

At page 365 of the same article, it is said: ''It is to be stressed, however, that in this field, as elsewhere in construing the Act, the courts disregard form and look to substance.

There is no sham partnership, either general or limited, which masquerades as such to exploit investors, or which is in reality availed of merely to evade the Act, no matter how perfect in 'paper form,' that could not be subjected to the corrective sanctions of the Act.''

We turn to the evidence which lends support to the determination of the trial court. The defendant Levine was asked as to when the list showing the name and address and amount of contribution of each person or group of persons was attached to Exhibit A (a document entitled ''Certificate of Limited Partnership of Vale Investment''); his testimony was: ''A. Well, I don't recall, but as investors would put money in, we'd keep adding their names to there, to the list. . . . Q. Who had control of this document at all times? A. While I was getting investors to put their money in, I had it. After that, our attorney had it. . . . Well, the contributions were given at different times, and the names on there were all put on at one time, whoever was—had given the contributions.'' Under his signature on the receipt which he gave to the plaintiff when the latter delivered to him checks in the sum of $22,000, Levine wrote ''V. P. and Secretary,'' which the trial court found to be a reference to Levine's offices in Laurelvale Construction Corp. Levine further testified as follows: ''Q. Were you out peddling partnership interests? A. Partnership? Q. Yes. Limited partnership interests? A. I was out trying to get investors. For my friends. . . . Q. Were you seeking investors or were you seeking partners? A. That, I don't know. I guess we were looking for people to put money up as investors.'' He said that it took several months to get the monies from the persons who signed as limited partners. All of the persons signing documents relating to the proposed limited partnership were not together at one time for such purpose. Mr. Kligerman, one of the group known as Fred Rivlin Investment Ventures, testified as to a meeting of the defendant Levine and that group in April 1956. Mr. Levine told of the plan for the purchase of land and the construction of homes. Mr. Kligerman summarized the statements of Mr. Levine as follows: ''In essence, what he had to say was the fact that a sum of $75,000 would have to be required for this, and that he hoped that Fred Rivlin and his co-partners would be able to raise $22,000.'' He further testified as follows: ''Mr. Rivlin's contribution—or rather the contribution by Fred Rivlin Investment Ventures was to be $22,000. Mr. Levine wanted Mr. Rivlin to contribute that first as the first

contributor in order to induce or interest the other limited partners who might be— ... Q. BY THE COURT: Is this what he said? Is this what Mr. Levine said? A. Almost verbatim. Q. All right. Go ahead. A. — in order to interest or induce—no, the word was 'get'—get the other limited partners in on this proposition.'' The plaintiff Rivlin testified to a conversation with Mr. Levine as follows: ''A. I repeat, I asked, 'Art, how much of that have you got now?' He said, 'Most of it is pledged.' I said, 'Well, pledge doesn't mean the cash.' He said, 'Well, someone has to start putting in the money.' I said, 'If I put in my $22,000 and you don't raise the balance of the $75,000, what happens then?' He said, 'Oh, I have got it.' He said, 'There is no question of raising that $75,000.' I said, 'But, suppose you don't, what happens to the—my $22,000?' He said, 'Leave that to me. If the $75,000 which is inconceivable of not raising—' he says, '—I'll certainly return your $22,000.' And he said further that in fact—he said, 'If it's not raised, I will put it into the limited partnership myself, the $75,000.' ''

The trial court was justified in reaching the conclusion that no bona fide limited partnership was formed. ''The understanding or misunderstanding of the parties as to the nature of the transaction is not determinative of its legal effect.'' (*People* v. *Sidwell,* 27 Cal.2d 121, at p. 126 [162 P.2d 913].) There was present no element of mutual selection of those who would constitute the membership of the partnership; rather, Levine went about among his relatives, friends and acquaintances seeking those who would invest in his enterprise in return for a share of the contemplated profits. Those who were called limited partners never met together but, whether they were individuals or groups of investors, one by one they were designated by Levine as money for the venture was forthcoming from time to time. In *State* v. *Simons,* 193 Ore. 274, the court said at pages 291-292 [238 P.2d 247]: ''It is argued that, because of evidence that defendants intended at some future time to organize the subscribers as a limited partnership under Oregon law, we must construe the Securities Law with that fact in view. The weakness of the argument lies in the fact that we are not considering the actions of a group of persons voluntarily associated together in a joint venture, but rather a sale of securities to persons indiscriminately selected and having no bond of union other than the fact that they had money and the gambling instinct. . . . The use of the provisions of the Limited Partnership

Act . . . as a cloak to legalize the acts of the defendants in this case is an inadmissible expedient.'' While in a sense the intentions of the defendants in the present case appear to have been innocent, their acts were deliberate and ''it is by their acts and the language of the Corporate Securities Act that we must judge the legal consequences of those acts and the sufficiency of the evidence to sustain the judgment.'' (*People* v. *Sidwell, supra,* 27 Cal.2d 121, at p. 126.)

The defendants seek to avoid the determination of the trial court by the contention that there is no evidence in the record that a permit was not obtained from the Commissioner of Corporations. But such a position is without merit. ''Where a cause is so conducted that the court and counsel may rightly and do infer that certain facts are conceded or admitted the court may so treat them.'' (*Cullinan* v. *Mercantile Trust Co.,* 80 Cal.App. 377, at p. 384 [252 P. 647].) Such is the present case as is evident from a review of the record. During the course of a discussion between the court and counsel as to a particular written statement, the following occurred: ''MR. MIDDLETON [counsel for defendants]: No. It is a communication from the State Division of Corporations stating that a permit had been issued for the issuance of stock to Laurelvale Construction Corporation. . . . THE COURT: If there was a permit to Laurelvale Construction Corporation authorizing it to issue any form of certificate of participation —— MR. MIDDLETON: No. THE COURT: ——Participation of profit or otherwise to the Plaintiff or the Plaintiff's group, it is very very material. . . . MR. MIDDLETON: No. This is a statement from the Division of Corporations stating that Laurelvale Construction Corporation was granted a permit on April 25 to issue a hundred shares of stock to Armsbury and Levine.'' The record discloses the following discussion during the argument in the trial court: ''THE COURT: . . . I am still concerned with the one query, and that is whether or not there was or was not a violation of the Corporate Securities Act. MR. SACKIN [counsel for the defendants]: With regard to that particular point, we do not feel that there was a violation for the reasons which I have already stated.'' The trial of the case having proceeded on the assumption by the court and all counsel that there was no permit in existence, the defendants cannot ask this court to treat the matter as having been in issue.

The defendants argue that if it be held that no partnership existed, ''under the evidence at least a joint venture

arrangement existed between the parties." But the defendants cannot bring themselves within subdivision (m) of section 25100 of the Corporations Code which exempts from the requirement of a permit "Any bona fide joint adventure interest, except such interests when offered to the public." In rejecting a similar contention in *Goldberg* v. *Paramount Oil Co.*, 143 Cal.App.2d 215, this court said, at page 222 [300 P.2d 329]: "None of this evidence shows any participation by plaintiff in the conduct of the enterprise. Plaintiff was a mere investor. The contract without ambiguity contemplated he was to play the passive role of investor only. He did not expect to reap a profit from his own services or other active participation in the enterprise within the rule of *People* v. *Syde*, 37 Cal.2d 765 [235 P.2d 601]."

In their opening brief the defendants make the following assertion: "The effect of the failure to file the affidavit, as provided in Section 448, Code of Civil Procedure, is to admit for all purposes of the trial that the Certificate of Limited Partnership, a copy of which was attached to the answer, is what it purports to be on its face and that it was executed and delivered by Rivlin on behalf of plaintiff's assignor. . . . This is exactly what was created by that instrument; a limited partnership, and there is no competent evidence to the contrary in the record."[3] But the applicable law is as stated by this court in *Miller* v. *McLaglen*, 82 Cal. App.2d 219, at pages 224-225 [186 P.2d 48]: "Failure to file the affidavit merely means that a plaintiff admits the due execution and genuineness of the instruments. He admits that the instruments were signed and delivered and that they are not spurious, nothing more. Failure to file an affidavit does not preclude a plaintiff from making any defense whatever to the affirmative allegations of the answer. He could, by evidence, controvert the instruments upon any and all grounds except that he could not controvert their due execution or their genuineness. He could controvert the instruments by evidence of fraud, mistake, undue influence, mental incapacity, want of consideration, failure of consideration, compromise, estoppel, that they were void because not fairly made or fully compre-

[3]Section 448 of the Code of Civil Procedure is as follows: "When the defense to an action is founded upon a written instrument, and a copy thereof is contained in the answer, or is annexed thereto, the genuineness and due execution of such instrument are deemed admitted, unless the plaintiff file with the clerk, within ten (10) days after receiving a copy of the answer, an affidavit denying the same, and serve a copy thereof on the defendant."

hended; he could question their legal effect; he could attack them by any other defense that would be open if the instruments were the basis of an action." Section 448 did not preclude the showing of the true nature of the transaction in the course of which the plaintiff signed the particular document.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.