[No. B013243. Second Dist., Div. Seven. May 28, 1986.]

JAMES H. SHERMAN, Plaintiff and Respondent, v.
MARSHALL LLOYD III et al., Defendants and Appellants.

694

**COUNSEL**

Louis J. Khoury for Defendants and Appellants.

Lewitt, Hackman, Hoefflin, Shapiro & Herzog and James P. Herzog for Plaintiff and Respondent.

**OPINION**

**JOHNSON, J.**—The appellants appeal from the trial court's grant of the respondent's motion for summary judgment. They raise three central issues

on appeal. First, did the respondent fail to pursue this matter in a timely fashion? Second, was there a triable issue of fact whether the issuance of a limited partnership interest was exempt from qualification? Third, should all of the appellants have been held liable for the transaction at issue? We conclude one of the appellants should not have been held liable. In all other respects, the decision of the trial court to grant the respondent's motion is affirmed.

## STATEMENT OF FACTS AND PROCEEDINGS BELOW

In and around August 1981 appellant Lloyd, a neighbor and friend of respondent Sherman, informed Sherman that one of his partners in his accounting firm was bringing together a group of investors to purchase property in Denver, Colorado. Lloyd asked Sherman if he would like to take part in this venture. Sherman stated he would. Lloyd subsequently gave Sherman the property analysis and escrow documents relative to the investment. Lloyd told Sherman he would be a limited partner with other limited partners.

On or about October 7, 1981, Sherman purchased a 4.38 percent interest in ML-Airport Properties, Ltd. (ML). At that time, he learned two partnerships were to be formed, ML and Stapleton, Ltd. (Stapleton). This was to be done to comply with a California exemption which required there be 10 or fewer limited partners in each partnership.

Stapleton was formed on October 15, 1981. ML's general partner, Lloyd, invested all of ML's funds in Stapleton on behalf of ML. In doing so, Lloyd became a limited partner in Stapleton. Stapleton used all of the money raised by ML and its limited partners to purchase a building in Denver.

Neither ML nor Stapleton obtained a permit for the sale of its limited partnership interest.

Pursuant to the arrangement, Sherman was to receive a guaranteed 8 percent return on his investment. When he did not receive this after a period of time, he spoke with Lloyd. Lloyd indicated there was a problem with the lease on the property. Lloyd subsequently sent Sherman a letter which had been sent to the limited partners of Stapleton regarding the property and a Chapter XI proceeding filed by Stapleton together with a monthly financial report.

In and around January 1983 Sherman sought legal advice as a result of the above information. The attorney informed him the structure of the limited partnerships may not comply with the requirements of California law.

On or about February 7, 1983, Sherman notified the appellants that he was rescinding his agreement to participate in the limited partnership since the investment which he purchased was a security and was not qualified as required under California law. Sherman offered to reassign any and all interest he had in ML upon the return of his investment together with interest. The appellants did not return Sherman's money.

On April 19, 1983, Sherman filed a complaint against the appellants for rescission and restitution raising the same contentions as in his earlier letter to the appellants.

On February 6, 1985, Sherman filed a motion for summary judgment contending there were no triable issues of fact and he was entitled to restitution since the security sold to him was not qualified under the California securities law.

The trial court granted Sherman's summary judgment motion on March 14, 1985. The court issued a notice of ruling on April 1, 1985.

The appellants appealed on April 16, 1985.

## I. Sherman Was Not Barred in Bringing This Action

█ Sherman brought the instant action for rescission and restitution pursuant to Corporations Code section 25503.[1] He alleged the appellants failed to qualify the security he purchased as required under Corporations Code section 25110. The appellants contend, however, the bringing of this action was barred by the terms of Corporations Code section 25507, subd. (a).[2] We disagree, concluding Sherman's action was timely.

█ "In ordinary tort and contract actions, the statute of limitations . . . begins to run upon the occurrence of the last element essential to the cause of action. The plaintiff's ignorance of the cause of action, or of the identity of the wrongdoer, does not toll the statute." (*Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 187 [98 Cal.Rptr. 837, 491 P.2d

---

[1]This section provides in relevant part: "Any person who violates Section 25110, 25130 or 25133, . . . shall be liable to any person acquiring from him the security sold in violation of such section, who may sue to recover the consideration he paid for such security with interest thereon at the legal rate, less the amount of any income received therefrom, upon the tender of such security . . . ."

[2]This section provides: "No action shall be maintained to enforce any liability created under Section 25503 . . . unless brought before the expiration of two years after the violation upon which it is based or the expiration of one year after the discovery by the plaintiff of the facts constituting such violation, whichever shall first expire."

421].) This rule, however, has not been applied when it would simply be unjust to deprive a litigant of a cause of action before that party has become aware he has been injured. (*Leaf* v. *City of San Mateo* (1980) 104 Cal.App.3d 398, 406 [163 Cal.Rptr. 711]; *April Enterprises, Inc.* v. *KTTV* (1983) 147 Cal.App.3d 805, 826 [195 Cal.Rptr. 421].) For instance, it has been held in the context of the doctor-patient relationship that "during the continuance of this professional relationship, which is fiduciary in nature, the degree of diligence required of a patient in ferreting out and learning of the negligent causes of his condition is diminished." (*Sanchez* v. *South Hoover Hospital* (1976) 18 Cal.3d 93, 102 [132 Cal.Rptr. 657, 553 P.2d 1129].) Moreover, this latter principle is not limited to the doctor-patient relationship, "but exists in other contexts as well, in which it is generally held that existence of the trust relationship limits the duty of inquiry." (*Ibid.*) Thus, when a potential plaintiff is in a fiduciary relationship with another individual, that plaintiff's burden of discovery is reduced and he is entitled to rely on the statements and advice provided by the fiduciary. (See *Baright* v. *Willis* (1984) 151 Cal.App.3d 303, 313 [198 Cal.Rptr. 510] [". . . [A] party who seeks professional advice regarding facts which might constitute malpractice is entitled to rely on the advice received."]; *Leaf* v. *City of San Mateo, supra,* 104 Cal.App.3d at p. 408 [Plaintiffs entitled to rely on advice of professional engineers].)

In the case at bar, Lloyd and Sherman, being partners in ML, were in a fiduciary relationship. (See *Cagnolatti* v. *Guinn* (1983) 140 Cal.App.3d 42, 48 [189 Cal.Rptr. 151]; *Jacoby* v. *Feldman* (1978) 81 Cal.App.3d 432, 442 [146 Cal.Rptr. 334].) At the time Sherman purchased his interest in ML, Lloyd informed Sherman two separate partnerships were going to be created. He further told Sherman the purpose for this was to comply with a California exemption which required there be 10 or fewer limited partners in each partnership. However, Lloyd also told Sherman there would be no problem proceeding in this manner since it had been done by his firm on a number of occasions. Thus, although Sherman was aware of the manner in which the investment was being structured, he was told that this arrangement was proper. Given the nature of the relationship that existed between Sherman and Lloyd, we believe Sherman was entitled to rely on this advice, *particularly* since Lloyd was the general partner of ML. Moreover, during the course of their relationship, Lloyd never told Sherman this advice had been incorrect. It was only due to other circumstances that Sherman had cause to question the structure of the investment.

As discussed above, Sherman purchased his interest in ML on or about October 7, 1981. It was his understanding he would be guaranteed an 8 percent rate of return on his investment. When this return was not forthcoming, he spoke with Lloyd. Lloyd instructed him there was a problem

with the lease on the property. Lloyd subsequently sent him information which had been sent to the limited partners of Stapleton. Sherman became concerned. Thus, in and around January 1983 Sherman sought legal advice. It was at this point Sherman learned for the first time that the structure of the limited partnership may not have complied with requirements of the California law. As a result of this legal advice, Sherman filed his complaint on April 19, 1983.

The appellants argue, however, Sherman was in possession of all the material facts upon which his action was based more than one year prior to the filing of the complaint. It was only his cause of action which Sherman was ignorant of until January 1983. As such, section 25507, subdivision (a) should apply. In particular, the appellants contend Sherman was aware two partnerships would be established and the reason for this arrangement "was to comply with some California exemption which required that there be 10 or fewer limited partners in each partnership." He was also aware ML would be a limited partner in Stapleton and Stapleton would take title in the property purchased. Thus, Sherman had knowledge of the existence and reasons for a two-tier partnership arrangement more than one year prior to the time his complaint was filed and the action should be barred.

We recognize it has been held in numerous contexts that a plaintiff's ignorance of his cause of action is no bar to the running of the statute of limitations. (See *Baker* v. *Beech Aircraft Corp.* (1974) 39 Cal.App.3d 315, 321 [114 Cal.Rptr. 171, 91 A.L.R.3d 981]; *McGee* v. *Weinberg* (1979) 97 Cal.App.3d 798, 803 [159 Cal.Rptr. 86].) However, such a principle is inapposite to the factual context in the case at bar. We are not faced with a situation in which a plaintiff was unaware of a cause of action simply due to a failure on his part to pursue the matter. In the case at bar, Sherman was specifically told that the investment structure complied with California law, i.e., there was no problem with creating two partnerships. In essence, Sherman was told no cause of action existed. Moreover, this advice was given by a fiduciary, the general partner of the partnership in which Sherman was investing.[3] We cannot interpret California law to require that such advice be taken lightly. Indeed, we believe case law has recognized that the recipient of such advice will quite appropriately give it substantial weight.

---

[3]Thus, the case at bar is readily distinguishable from the recent Supreme Court decision *Gutierrez* v. *Mofid* (1985) 39 Cal.3d 892 [218 Cal.Rptr. 313, 705 P.2d 886]. In that case, the Supreme Court held the running of the statute of limitations in a medical malpractice action was not affected when an attorney informed a potential plaintiff no cause of action existed causing the plaintiff to delay the filing of a suit until after the statute had run. Critical to the Court's conclusion was the fact that the defendants in no way contributed to the plaintiff's delay in pursuing the action. A third party, the attorney, dissuaded the plaintiff from pursuing his claim. (*Id.*, at pp. 899-900.)

Given these factors, we do not believe the general principle relied on by the appellants is applicable.

We conclude Sherman's complaint was timely filed. Since Sherman was in a fiduciary relationship with Lloyd, he was entitled to rely on Lloyd's statements concerning the propriety of the investment structure. As such, Sherman's cause of action did not accrue until he learned from counsel that the investment structure may have been improperly created. (See *Enfield* v. *Hunt* (1979) 91 Cal.App.3d 417, 422-423 [154 Cal.Rptr. 146].)

## II. THERE WAS NOT A TRIABLE ISSUE OF FACT WHETHER THE ISSUANCE OF THE LIMITED PARTNERSHIP INTEREST IN ML WAS EXEMPT FROM QUALIFICATION

■ The requirement of qualification as mandated in Corporations Code section 25110 is subject to exemptions. The appellants argue the transaction in the case at bar was exempt pursuant to Corporations Code section 25102, subdivision (f).[4] However, we conclude the partnership arrangement created in the case at bar was not a bona fide limited partnership and as such the exemption is not applicable.

In *Rivlin* v. *Levine* (1961) 195 Cal.App.2d 13 [15 Cal.Rptr. 587], the court held a critical factor in determining whether a limited partnership was bona fide was whether each partner had the right to determine the membership of the partnership. In reaching this conclusion, the court relied substantially on Dahlquist, *Regulation and Civil Liability Under the California Corporate Securities Act* (1945) 33 Cal.L.Rev. 343. As stated in this article: "It is believed that one of the chief criteria for determining whether an interest in a partnership is a 'security' under the Act is the element of selection of the partners. In all general partnerships, and also in *bona fide* limited partnerships, there is the right of *delectus personarum,* the right to determine membership. No partner is admitted without unanimous approval of every other partner. A true partnership is a relation of personal confidence and is a select closed group . . . . [¶] Limited partnerships are creatures of statute requiring formal statutory compliance. They do not readily lend

---

[4]At the time the limited partnership arrangement was created, this section provided: "The following transactions are exempted from the provisions of section 25110: . . . Any offer or sale, in a transaction not involving any public offering, of any *bona fide* general partnership, joint venture or limited partnership interest . . . ." (Italics added.)

We note this subdivision was amended in significant regard effective November 1, 1981. However, the transactions at issue in the case at bar were all entered into prior to this effective date. Thus, our analysis will be based on former subdivision (f) and we reject the appellants' analysis which is based entirely on the amended subdivision. (See *People* v. *Feno* (1984) 154 Cal.App.3d 719, 725 [201 Cal.Rptr. 513]; *People* v. *Graham* (1985) 163 Cal.App.3d 1159, 1169-1170 [210 Cal.Rptr. 318].)

themselves to bold and dishonest schemes whereby capital is raised to carry out a venture by indiscriminate solicitation of the public at large. As long as the requirement of unanimous agreement on the body of membership is preserved it would appear clear that the partnership is not an issuer of a 'security.'" (*Id.*, at p. 363.) The *Rivlin* court concluded the limited partnership formed in the case before it was not bona fide since the general partner sought membership among his relatives, friends and acquaintances, seeking those who would invest in return for future profits. The limited partners never met together. (*Rivlin* v. *Levine, supra,* 195 Cal.App.2d at p. 23.)

In *Solomont* v. *Polk Development Co.* (1966) 245 Cal.App.2d 488 [54 Cal.Rptr. 22], the court endorsed the reasoning and result reached in *Rivlin.* As the court stated, "*Rivlin* is applicable, and this is so because the 'mutual selection' requirement test, upon which that case turned, is simply declarative of established partnership law." (*Id.*, at p. 497.) In this case, the investors were selected at random. The general partner sought out investors among his friends who had money to invest and who would not play an active role in the investment. The limited partners never met with each other. As such, the limited partnership was not bona fide. (*Id.*, at pp. 493, 497; see also Comment, *Limited Partnerships and the California Securities Law: Restricting the Public Sale of Limited Partnership Interests* (1980) 13 U.C. Davis L.Rev. 618, 643, fn. 142; *Johnston* v. *Winn* (Tex.Civ.App. 1937) 105 S.W.2d 398, 400.)

In the case at bar, Lloyd informed Sherman a group of investors was being brought together to purchase property in Colorado. Sherman did not know any of the other partners of ML except for the general partner, Lloyd. He also had no pre-existing relationship with any of the other individuals. Moreover, as the appellants admit, the partnership agreement was signed by the limited partners over a period of seven days. Sherman signed the agreement on October 7, 1981. However, only one other limited partner signed on that date. Thus, the limited partners did not even meet each other at the time of signing. We also note that Lloyd only spoke with two of the limited partners about their investment in ML. Three other individuals were involved in obtaining the other limited partners. Given these undisputed facts, we conclude there was no mutual selection of members in this partnership. As such, the limited partnership was not a bona fide one and the section 25102, subdivision (f) exemption is inapplicable.

Although not critical to our decision, a stronger case for finding no bona fide limited partnership is presented in the case at bar than in *Rivlin* and *Solomont* since we believe the two partnerships in the case before us should be integrated, i.e., the formation of the two partnerships should be viewed

as one transaction. (See 1 Marsh & Volk, Practice Under the Cal. Securities Laws, at pp. 4-28.9–4.28.12; Note, *Application of the Securities Doctrine of Integration to Real Estate Syndicates* (1973) 46 So.Cal.L.Rev. 428.)

While we have found no California case law establishing the factors to be utilized in assessing whether seemingly separate offerings should be viewed as one transaction, the Commissioner of Corporations addressed this issue in Commissioner's Release No. 67-C (Oct. 20, 1981). In that release, the commissioner cited SEC's Release 33-4552 as establishing the relevant criteria. These factors are: (1) Whether the different offerings are part of a single plan of financing; (2) Whether the offerings involve issuance of the same class of security; (3) Whether the offerings are made at or about the same time; (4) Whether the same type of consideration is to be received; and (5) Whether the offerings are made for the same general purpose. (See also Commissioner's Opinion No. 73/120C.) "Of the foregoing factors, the most important, in the Commissioner's opinion, will be whether the offerings are made for the same general purpose and whether they constitute a part of a single plan of financing." (1 Marsh & Volk, *supra,* at p. 4-28.12.)

In the case at bar, ML was formed on or about October 14, 1981. Stapleton was formed on October 15, 1981. ML was formed for the specific purpose of investing in Stapleton. Two limited partnerships were formed rather than one for administrative purposes and *to reduce the number of partners in Stapleton.*[5] From these undisputed facts, it is clear the two partnerships were part of a single plan of financing, the offerings were made at or about the same time, and the offerings were made for the same general purpose. We believe integration of these two offerings is appropriate.

Given integration, our conclusion ML was not a bona fide limited partnership is even more apparent. Prior to executing the ML partnership agreement, Sherman knew none of the partners of Stapleton except Lloyd and had no pre-existing relationship with the other partners. *Only* Lloyd was a partner in both partnerships. Moreover, it can be inferred that the limited partners in ML had no knowledge as to the limited partners in Stapleton.

### III. Although Henry Louis Scott & Co. Should Not Have Been Found Liable to Sherman, the Liability of Mohema, Inc. and Scott Was Properly Established

■ The appellants contend since appellants Scott, Henry Louis Scott & Co., and Mohema, Inc. were not in privity of the contract with Sherman

---

[5]We can well understand why the appellants sought to avoid the qualification requirements. As California Administrative Code, title 10, section 260.140.114.9 provided at the time of the formation of the partnerships, "Investments in limited partnership interests of another program [any organization, other than a corporation or a real estate investment trust, which has as a primary purpose the investment in, operation of, or receipt of gain from an interest in real property] shall be prohibited . . . ."

and did not make any representations to Sherman at the time he purchased an interest in ML, they cannot be liable to Sherman.

As discussed earlier, Corporations Code section 25503 provides in relevant part: "Any person who violates Sections 25110, 25130, or 25133 . . . shall be liable to any person acquiring from him the security sold in violation of such section . . . ."[6] Moreover, Corporations Code section 25504 provides in part: "Every person who directly or indirectly controls a person liable under Section 25501 or 25503, every partner in a firm so liable, every principal executive officer or director of a corporation so liable, every person occupying a similar status or performing similar functions, . . . are also liable jointly and severally with and to the same extent as such person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist."

In the case at bar, ML failed to qualify the security Sherman purchased in violation of California law. Since Sherman purchased the security from ML, ML is liable to Sherman under section 25503. Moreover, as discussed above, we view the formation of ML and Stapleton as one transaction/one entity. As such, Stapleton is equally liable under this section. Lloyd is the general partner of ML and in this position controls ML. He is thus liable pursuant to section 25504. Mohema, Inc. is the general partner of Stapleton and is liable in the same regard. Mr. Scott is one of the shareholders of Mohema, owning a one-third interest. He is also an officer and director of Mohema. The idea to form ML came from the shareholders of Mohema and the shareholders prepared the documentation describing the investment property which Lloyd gave to Sherman. Given these factors, Scott is likewise liable under section 25504.[7] However, Sherman provides no basis for holding Scott & Co. liable. The only apparent connection Scott & Co. had to the transaction at issue was its role as the accounting firm for ML. We fail to see how this nexus causes Scott & Co. to fall within the parameters of section 25504. We believe the court erred in this regard.

---

[6]Corporations Code section 25013 provides: "'Person' means an individual, a corporation, *a partnership,* a joint venture, an association, a joint stock company, a trust, an unincorporated organization, a government, or a political subdivision of a government." (Italics added.)

[7]The appellants do not argue Mohema or Scott had no knowledge of or reasonable grounds to believe in the existence of the facts giving rise to the qualification violation. Indeed, Scott testified at his deposition that no permit was obtained for the issuance of partnership units in Stapleton or ML.

## DISPOSITION

The portion of the judgment finding Scott & Co. jointly and severally liable for the securities violation is reversed. In all other respects, the judgment is affirmed. Respondent to receive his costs on appeal.

Lillie, P. J., and Thompson, J., concurred.