951 F.2d 361
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
MILES, INC., Plaintiff-Appellant,
v.
SCRIPPS CLINIC AND RESEARCH FOUNDATION; Rorer Group, Inc.;
Armour Pharmaceutical Co.; Revlon, Inc.; Robert N.
Nakamura, an individual; Frances O. Zimmerman, Special
Administrator for the Estate of Theodore S. Zimmerman, an
individual, Defendants-Appellees.
 No. 89-56302.
 United States Court of Appeals, Ninth Circuit.
 Argued Dec. 6, 1990.
Submitted Jan. 2, 1991.
Decided Dec. 23, 1991.
 
 Before WALLACE, Chief Judge, and O'SCANNLAIN and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Miles, Inc. ("Miles") has brought suit against Scripps Clinic and Research Foundation ("Scripps") and others, alleging that, inter alia, they improperly converted Miles's right to commercialize a cell line used to combat hemophilia. The district court dismissed Miles's suit on statute of limitations grounds, reasoning that Miles knew, or should have known, of the alleged conversion many years before it eventually brought this suit. Because we conclude that factual questions exist as to whether Miles should have been on notice of the alleged conversion, we reverse.
 
 
 3
 * Before turning to the merits of Miles's appeal, we must first establish the proper procedural posture of this case. In dismissing Miles's complaint on statute of limitation grounds, the district court considered not only the allegations contained within the complaint, but also judicially noticed the existence and content of four documents: (1) a patent issued to Dr. Theodore Zimmerman ("Zimmerman patent"); (2) an article published in the March 1982 edition of the Proceedings of the National Academy of Science ("PNAS article"); (3) Miles's April 26, 1984, protest against the reissuance of the Zimmerman patent; and (4) Miles's 1987 Form 10-Q. We must decide whether the district court's judicial notice of both the existence and content of these documents transformed the defendants' motion to dismiss into a motion for summary judgment.
 
 
 4
 Federal Rule of Civil Procedure 12(b) provides that if, on a motion to dismiss for failure to state a claim upon which relief may be granted, matters outside the complaint are presented and considered, the motion should be treated as one for summary judgment under Rule 56. We have, however, recognized one important exception to this general rule: matters that are properly subject to judicial notice may be considered by a court without converting a motion to dismiss into one for summary judgment. Mack v. South Bay Beer Distrib., Inc., 798 F.2d 1279, 1282 (9th Cir.1986); see also Emrich v. Touche Ross & Co., 846 F.2d 1190, 1198 (9th Cir.1988). Moreover, a district court may not only judicially notice the existence of a particular document, but the substance of the document as well. See Sinaloa Lake Owners Ass'n v. City of Simi Valley, 882 F.2d 1398, 1403 (9th Cir.1989) (in reviewing district court's judgment on the pleadings, court of appeals took judicial notice of statistics prepared by California Judicial Council), cert. denied, 110 S.Ct. 1317 (1990). It is reversible error for a court to grant a motion to dismiss that has been converted to one for summary judgment without providing all parties a reasonable opportunity to present material germane to a Rule 56 motion. See Mack, 798 F.2d at 1282.
 
 
 5
 The district court did not abuse its discretion in judicially noticing the four documents, nor did such notice convert the motion to dismiss into one for summary judgment. We thus turn to the merits of Miles's appeal, accepting the allegations contained within the complaint as true. See Evans v. Safeco Life Ins. Co., 916 F.2d 1437, 1439 (9th Cir.1990).
 
 II
 
 6
 Under California law, a statute of limitation generally begins to run on the date of injury. See Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1109, 245 Cal.Rptr. 658, 661, 751 P.2d 923, 926 (1988).[1] However, this general rule has been modified by the so-called "discovery rule," which provides that "the accrual date of a cause of action is delayed until the plaintiff is aware of her injury and its negligent causes." Id., 245 Cal.Rptr. at 661, 751 P.2d at 926-27. The test for awareness is objective, not subjective. "A plaintiff is held to her actual knowledge as well as knowledge that could reasonably be discovered through investigation of sources open to her." Id., 245 Cal.Rptr. at 661, 751 P.2d at 927. The duty to investigate arises "once the plaintiff becomes aware of facts which would make a reasonably prudent person suspicious." Bedolla v. Logan & Frazer, 52 Cal.App.3d 118, 131, 125 Cal.Rptr. 59, 69 (1975); see also Lee v. Escrow Consultants, Inc., 210 Cal.App.3d 915, 921, 259 Cal.Rptr. 117, 121 (1989) (same). In making this determination, a court or finder of fact should consider whether the parties were in a fiduciary relationship; if so, the duty of inquiry is diminished. See Sherman v. Lloyd, 181 Cal.App.3d 693, 698, 226 Cal.Rptr. 495, 498 (1986) ("when a potential plaintiff is in a fiduciary relationship with another individual, that plaintiff's burden of discovery is reduced...."); see also Sanchez v. South Hoover Hosp., 18 Cal.3d 93, 102, 132 Cal.Rptr. 657, 663, 553 P.2d 1129, 1135 (1976).
 
 
 7
 "Whether the discovery rule applies at all is initially a matter of pleading." Mangini v. Aerojet-General Corp., 230 Cal.App.3d 1125, 281 Cal.Rptr. 827, 843 (1991). The complaint must allege the time and manner of discovery and the circumstances excusing delayed discovery. Id. Once the hurdle is overcome, the question of when a person should have become "suspicious" is generally a question of fact. See Day v. Rosenthal, 170 Cal.App.3d 1125, 1164, 217 Cal.Rptr. 89, 114 (1985) ("in some cases, only the trier of fact can ascertain when the consequential damage became sufficiently appreciable to put a reasonable person on notice"), cert. denied, 475 U.S. 1048 (1986). Only where the relevant facts are not in dispute may the effect of a statute of limitations be decided as a question of law. See McKeown v. First Interstate Bank of California, 194 Cal.App.3d 1225, 1229, 240 Cal.Rptr. 127, 129 (1987); cf. Moseian v. Peat, Marwick, Mitchell & Co., 727 F.2d 873, 877 (9th Cir.) (when an alleged wrongdoing should have been discovered "may be decided as a matter of law only when uncontroverted evidence irrefutably demonstrates plaintiff discovered or should have discovered the fraudulent conduct") (quotation omitted), cert. denied, 469 U.S. 932 (1984).
 
 
 8
 While neither the Zimmerman patent nor the PNAS article specifically mention cell line 2.2.9--either by name or description--the defendants contend that the two should have placed Miles on inquiry notice. Dr. Zimmerman, the defendants note, was working at Scripps-Miles with the express purpose of creating a cell line to be used in producing Factor VIII:C. Almost simultaneously with the demise of Scripps-Miles, Dr. Zimmerman published an article in the Proceedings of the National Academy of Science outlining a process to produce Factor VIII:C. In the article, Dr. Zimmerman publicly thanked Dr. Nakamura, head of the Scripps-Miles laboratory, for his assistance. Dr. Zimmerman then applied for and received a patent for a process producing Factor VIII:C. This combination of events, the defendants reason, was surely sufficient to make a reasonable person suspicious.
 
 
 9
 Conversely, Miles contends that whether the Zimmerman patent or PNAS article should have placed it on inquiry notice is a question of fact that simply cannot be resolved at the pre-discovery stage of the litigation. Because the patent and PNAS article do not mention cell line 2.2.9, Miles reasons, it is reasonable to infer that such cell line was not used in the monoclonal antibodies production process. In any event, Miles contends, nothing about either the patent or the article suggested that the cell line had been used commercially.
 
 
 10
 This is a difficult case. Nonetheless, at this pre-discovery stage of the litigation, we agree with Miles. Miles's third amended complaint adequately alleges the time and manner of discovery, as well as the justification for the delayed discovery. Moreover, since Miles's allegations must be accepted as true, and all reasonable inferences resolved in Miles's favor, we simply cannot say that, as a matter of law, Miles's failure to inquire based upon the patent and PNAS article was unreasonable. Miles has alleged a fiduciary relationship between itself, Scripps, and Dr. Zimmerman. Such a relationship, if true, would have decreased Miles's duty of inquiry. See Sherman, 181 Cal.App.3d at 698, 226 Cal.Rptr. at 498.[2] While the primary purpose of a patent is usually to protect an invention for future commercial exploitation, this is the not the exclusive reason for obtaining a patent. We cannot say, on the limited record before us and in light of the alleged fiduciary relationship, whether Dr. Zimmerman's patent should have put a reasonable person on inquiry notice as a matter of law. We note that researchers tend to exchange cell lines with each other to further research goals, even when the right to commercialize a cell line rests exclusively with one entity. See Moore v. Regents of the Univ. of California, 51 Cal.3d 120, 271 Cal.Rptr. 146, 162, 793 P.2d 479, 495 (1990). Neither the PNAS article nor the patent--which was assigned to a nonprofit organization--are inconsistent with the notion that Dr. Zimmerman was using anything that he might have developed at the Scripps-Miles laboratory solely for scientific and noncommercial purposes.
 
 III
 
 11
 As an alternative to their statute of limitations argument, the defendants maintain that Miles has failed to state any claims upon which relief may be granted. Of course, this was not the basis relied upon by the district court in dismissing Miles's complaint. However, there is no doubt that we have the authority to affirm the district court on any basis fairly supported by the record, even if not relied upon by the district court. See Saulsbury Orchards & Almond Processing, Inc. v. Yeutter, 917 F.2d 1190, 1196 (9th Cir.1990). "Whether, as a prudential matter, we should do so depends on the adequacy of the record and whether the issues are purely legal, putting us in essentially as advantageous a posture to decide the case as would be the district court." Golden Nugget, Inc. v. American Stock Exchange, Inc., 828 F.2d 586, 590 (9th Cir.1987).
 
 
 12
 We decline to do so in this case. While the issues are purely legal, we note that the questions raised by Miles's causes of action are ones of first impression. Miles's conversion claim requires determination of whether a "right to commercialize" a cell line is a property right whose dispossession can give rise to a conversion claim, an issue not yet squarely addressed by California courts. Likewise, the fiduciary obligations of joint venturers to each other, where their venture is incorporated, is also an important question of law. Despite these issues' importance and novelty, the parties devoted less than six pages of their appellate briefs to these issues. In light of the lack of attention given to these issues by the parties, we decline to address them at this time.
 
 IV
 
 13
 The Scripps defendants posit a second alternative ground for affirming the district court. Miles's factual assertions in this case, the defendants maintain, are inconsistent with those made in the Northern District litigation and, accordingly, are barred by the doctrine of judicial estoppel.
 
 
 14
 The doctrine of judicial estoppel is an equitable doctrine whose invocation by this court is discretionary. See Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir.1990). "Judicial estoppel is most commonly applied to bar a party from making a factual assertion in a legal proceeding which directly contradicts an earlier assertion made in the same proceeding or a prior one." Id. (emphasis added; quotation omitted). Here, we cannot say on the limited record before us that Miles's assertions regarding cell line 2.2.9 in the Northern District litigation were "directly contradict[ory]" to its assertions in this case. Accordingly, we do not pass upon the issue and therefore decline to affirm the district court's dismissal on judicial estoppel grounds.
 
 V
 
 15
 Finally, Frances Zimmerman claims that, regardless of this court's resolution of the prior issues, the claims against Dr. Zimmerman were properly dismissed because Miles failed to follow the dictates of Federal Rule of Civil Procedure 25(a) for substituting a party upon the death of a previously-named party. While we may affirm a district court's judgment on any basis supported by the record, this rule does not extend as far as Zimmerman would have this court believe. We are powerless to consider the motion to substitute parties unless separately appealed by Zimmerman. The motion to substitute parties was a distinct, separate matter, evidenced by the fact that the district court granted Miles's motion to substitute parties prior to dismissing the complaint. Accordingly, this court is without jurisdiction to resolve this claim. See Haffa v. United States, 516 F.2d 931, 933 n. 1 (7th Cir.1975) (court of appeals lacked jurisdiction to decide propriety of district court's decision denying appellee's motion to dismiss third-party complaint against him, where appellee failed to file notice of appeal); cf. Torres v. Oakland Scavenger Co., 487 U.S. 312, 316-17 (1988) (court of appeals lacked jurisdiction over litigant due to failure of litigant to place litigant's name on notice of appeal).
 
 
 16
 REVERSED and REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The applicable statute of limitations for Miles's conversion and fraud causes of action is three years. See Cal.Code Civ.Proc. § 338. The statute of limitations governing Miles's breach of fiduciary duty cause of action is generally four years. Cal.Code Civ.Proc. § 343. However, since the defendants contend that Miles should have been aware of the alleged conversion more than four years prior to the institution of this action, this one-year difference is of no consequence
 
 
 [2]
 The dissolution of a joint venture does not terminate the fiduciary obligations of the joint venturers to each other with respect to the business purposes of the joint venture. See Leff v. Gunter, 33 Cal.3d 508, 514, 189 Cal.Rptr. 377, 381, 658 P.2d 740, 744 (1983)