Jennie **VUCINICH**, Plaintiff/Appellant,

v.

**PAINE, WEBBER, JACKSON & CURTIS, INC., a Delaware Corporation, and Philip F. Moore, Defendants/Appellees.**

No. 85–5631.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 10, 1986.

Decided Oct. 23, 1986.

Allen J. Capeloto, Richard L. Rubin, Capeloto & Rubin, San Francisco, Cal., for plaintiff/appellant.

George M. Garvey, Munger, Tolles & Olson, Los Angeles, Cal., for defendants/appellees.

Before CANBY, REINHARDT, and JOHN T. NOONAN, Circuit Judges.

NOONAN, Circuit Judge.

Jennie Vucinich brought this action against Paine, Webber, Jackson, and Curtis, Inc. (Paine, Webber) and Philip F. Moore, alleging violation of sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78j(b) and 78t(a), common law fraud, breach of fiduciary duties by a broker, professional negligence, and negligent supervision of a broker. The district court directed a verdict for the defendants. We reverse and remand for trial.

*Events.* On January 11, 1977 Jennie Vucinich consulted Philip F. Moore, a broker with Paine, Webber about possible investments. Vucinich was a forty-five year old housewife, the mother of four children, married to the self-employed operator of a gas station. She had had a high school education plus three semesters at Marshall College, West Virginia, where she majored in home economics. The annual income of the Vuciniches at the time was $30,000, although the family income had varied widely and Mr. Vucinich's salary was twice what it had fairly recently been. The family lived in Cathedral City, California in the desert area. In 1975 or 1976 Jennie Vucinich had inherited from her parents $40,000 in common stocks, and, becoming a client

of Paine, Webber in November 1976, she had undertaken to see what should be done about them. In addition, she had $20,000 in cash recently received from the sale of her parents' house.

Vucinich told Moore that she was not interested in gambling as one gambles in Las Vegas. She was expressly interested in capital gains. She was least interested in speculation, defined by Moore as "short-term, high-risk investments." According to Moore's own testimony, he told her that he too had a low opinion of gambling and that he did have advice for her. She should put the $20,000 into "a safe, no risk investment," which he identified as a tax-deferred annuity. She should take the "$40,000 that was already at risk in the stock market" and "keep that money in a stock market type risk situation." Specifically, he advised her to sell the inherited portfolio and to go into selling short. Vucinich accepted the advice.

Selling short was a new concept to Vucinich. Moore told her that it meant selling something before you bought it. He also told her that a short seller must "put up collateral as good faith." At least these are the only impressions she retained of his instructions. She knew that she was betting against the market. She realized from what he said that if the market went up and the stocks she had sold went up, she would lose. Moore did not tell her that short sales were speculative. He did not differentiate either in his speaking to her or in his testimony at the trial between the risks run by a purchaser of common stock and the risks run by a short seller.

Specifically, Moore did not inform Vucinich that at the heart of a short sale was a credit transaction and that the sale was only possible because Paine, Webber or some unidentified third party would lend her the stock she sold. The use of the term "collateral" did not alert her to her role as debtor; she misunderstood collateral to be a token of good faith. Nor did Moore enlighten her on margin calls or on the 50 percent margin requirements then in effect. He recommended that she make

$40,000 of short sales and use the $40,000 from the sale of her portfolio as collateral. The effect of this recommendation, which she followed, was that she was insulated from a margin call until she had lost $20,000. She was uninformed about this insulation.

Moore was supervised at the Palm Desert office of Paine, Webber by Richard Kite, branch manager of the office and a vice president of Paine, Webber. His duties included assuring compliance by the brokers with the securities laws, and he had six to eight brokers under his supervision. Every quarter he reviewed the ledgers kept for their clients, and his approval was necessary for every short sale made through the office. Attached to each ledger was a "client profile," indicating the investment objectives of the client. According to Kite, it was "very important" for him as a supervisor to be sure that what was transacted for a client fitted the client's needs and investment objectives. According to Moore, Kite never discussed with him the suitability of short selling by Vucinich.

As Moore further testified, he promised Vucinich to "monitor" her account, and, again according to him, he kept this promise. He did not explain to her what "monitoring" an account meant. Although Vucinich did not rubber stamp all his suggestions, he chose the stocks she should sell short, and she followed his advice as to what to sell short and when to sell short. Vucinich was unable to interpret the statements she received from Paine, Webber and, according to Vucinich, was unable to determine the changing value of her new portfolio from the statements. She has testified that when she asked Moore for the value of the account, he put her off with the observation that the statements were always out of date.

By 1978 Vucinich knew that, contrary to Moore's prediction, the stock market had not gone down. According to Moore's own testimony, he visited her family socially in the summer of 1978, and her husband asked, "Well, dummy, are we still losing

money?" and Moore replied, "Well, yeah, the market's gone against us, but, you know, the indicators are that the market will fall and I don't think it's anything to worry about."

In July 1979 there was a margin call and Moore recommended closing out two positions, keeping all others. Vucinich followed this advice. In November 1979 she wanted to close out completely, but Moore advised staying in. There was another margin call in January 1980. Again Vucinich wanted to close out completely and Moore advised her not to do so. She again accepted his recommendation and in February 1980 put up $2,500 more as collateral. Finally, in September 1980 on his advice, she closed out. When at that time she asked Moore, "Why did you give me so many wrong answers?" her testimony is that he replied: "if he knew how to make money in the stock market that he would not be working as a broker." She received a total of $8,273.93 from her Paine, Webber account. She filed the present suit on June 11, 1982.

The defendants were granted summary judgment on May 9, 1983. On appeal to this court that judgment was reversed. *Vucinich v. Paine, Webber, Jackson & Curtis, Inc. (Vucinich I)*, 739 F.2d 1434 (9th Cir.1984). A puzzling feature of the court's opinion is the statement in paragraph one, "We affirm in part and reverse in part." Nothing appears in fact to be affirmed. The opinion concluded: "Reversed and remanded." The court noted that Vucinich's deposition stated that "she was not experienced in the market, was unaware of the risks of the short sell investment and relied extensively on the advice of her broker." The court also took note of Vucinich's argument that the defendants were reckless as a matter of law in the recommendation to sell short, in failing to tell her that the strategy was speculative, and in failing to take into account her stated desire to have capital gains and to avoid speculation. The court held that the facts before the court, presented by depositions, "were sufficient to raise factual questions as to defendant's state of mind

and the factors determinative of duty to the plaintiff." Summary judgment was therefore inappropriate.

The court in *Vucinich I* also ruled on the defendants' contention that the federal securities and common law fraud claims were barred by a three year statute of limitations, Cal.Civ.Proc.Code, § 338(4) (West Supp.1984), *Briskin v. Ernst & Ernst*, 589 F.2d 1363, 1365 (9th Cir.1978), and that the negligence and breach of fiduciary duty claims were barred by a two-year statute of limitations. Cal.Civ.Proc.Code § 339(1) (West Supp.1984). The defendants pointed to the fact that suit had been commenced more than three years after Vucinich "had become aware that the market was running against her." The court itself observed that by June 1980 she had received "several margin calls." On the other hand, the court noted Vucinich's contention that she could not decipher the statements she got from Paine, Webber and "that she relied on Moore's continuing reassurance that a longer time was needed to realize gains from his strategy." The court concluded: "Whether the events existing as of June 1979 and June 1980 were sufficient to put Vucinich on notice and whether the reassuring statements of defendants reasonably affected that notice is a disputed question of fact requiring determination by the district court." 739 F.2d at 1437.

The case was accordingly remanded for trial. The district judge quashed a subpoena served on Paine, Webber and excluded a substantial part of the expert testimony offered by Vucinich as well as the plaintiff's offered testimony of a similar complaint against the Paine, Webber office in question. At the conclusion of the plaintiff's case, the district judge directed a verdict for the defendants on all counts. This appeal followed.

*Issues:* Was it error for the district court to direct a verdict?

Were the district judge's rulings on evidence and on the subpoena correct?

*Analysis.* 1. This case has returned to us on appeal from a directed verdict en-

tered at the close of plaintiff's case. In determining whether a directed verdict is appropriate, our inquiry is identical to that of the district court. *Jenkins v. Whittaker Corp.*, 785 F.2d 720, 729 (9th Cir.1986). We view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party to determine whether the evidence permits only one reasonable conclusion as to the verdict. *See, e.g., Miller v. Republic National Life Ins. Co.*, 789 F.2d 1336, 1340 (9th Cir., 1986).

■ Because this case is before us for a second time on appeal, we are constrained by the "law of the case" established in *Vucinich I.*

> [A] decision of a legal issue or issues by an appellate court establishes the "law of the case" and must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal in the appellate court, unless the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice.

*Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 833 (9th Cir.1982) (quoting *White v. Murtha*, 377 F.2d 428, 431–32 (5th Cir. 1967). *See also Gould v. Mutual Life Insurance Co. of New York*, 790 F.2d 769, 774 (9th Cir.1986); *Pubali Bank v. City National Bank*, 777 F.2d 1340, 1342 (9th Cir.1985). In *Vucinich I*, we held that summary judgment on the section 10(b) claim was inappropriate because "the facts before the court were sufficient to raise factual questions as to defendant's state of mind and the factors determinative of the duty owed the plaintiff." 739 F.2d 1436. We also held that disputed issues of fact existed with regard to notice for purposes of the statute of limitations pertaining to all claims. *Id.* at 1437.

Because we found in *Vucinich I* that there were disputed issues of material fact, it followed that plaintiff was entitled to have those issues resolved by the jury if her evidence held up at trial and if no other issues foreclosed her claim. Our review of the record convinces us that the requisite evidence was produced and that it was error for the trial judge to prevent the case from going to the jury.

The defendants contend that the directed verdict was "based on the plaintiff's failure to identify any misrepresentation or omission of material fact." But the evidence actually presented went beyond what this court already held to present a factual issue as to "the duty owed the plaintiff." Under section 10(b) this court had already ruled explicitly:

> "Vucinich presented evidence to the district court supporting her claim that the defendants owed her a high duty of care and had been reckless in fulfilling that duty." *Vucinich I*, 739 F.2d at 1436.

The law of the case determined that this evidence should go to the jury.

The defendants contend that Vucinich's trial testimony undermined her deposition testimony that as of June 1979 she was not "under the impression" that her short positions "had declined by any significant amount." Some of her trial testimony could be argued to go in this direction. Other parts of her testimony reinforced the thrust of her deposition that she was essentially in the dark about the extent of her losses. Ambiguity remained for resolution by the trier of fact.

The attempt by the defendants to explain the district court's actions is not persuasive and becomes even less persuasive when the transcript is read reciting the thoughts of the district judge in reaching the decision to direct a verdict. Strikingly, the judge makes no mention of the section 10(b), which, as defendants acknowledge, *Vucinich I* dealt with at length. The judge speaks as though the section 10(b) claim was not in his mind, unless it was meant to be precluded by the statement he makes on the statute of limitations, viz.: "And you have some real problems, real problems with the Statute of Limitations. So the motion for directed verdict is granted." That the statute of limitations issues

**460**

should have been treated as a matter of law after they had been classified as matters of fact by this court is not a sustainable position.

■ 2. In order to avoid further errors with regard to the conduct of the trial, we restate the law applicable to cases of this type. The statute of limitations under California law may be tolled by the reassurances of a broker to a client regarding matters relevant to possible misrepresentation. *Twomey v. Mitchum, Jones, & Templeton Inc.*, 262 Cal.App.2d 690, 727–29, 69 Cal. Rptr. 222 (1968). If the plaintiff proves that she relied on Moore's promise to monitor her account and his advice not to worry in 1978, no statute of limitations began to run in 1978.. If she proves that she relied on Moore's promise to monitor her account and his advice not to close out all her positions in July 1979, November 1979, and January-February 1980, no statute of limitations began to run at any of those dates, and none of her claims is barred by any applicable statute of limitations.

■ The law does not impose liability for fraud simply because a person is led to make investments that may have turned out to be unprofitable or unwise. To find for the plaintiff a jury must find that she relied on statements containing material omissions. Although Vucinich was informed by Moore that a short sale was a bet against the market, that she ran a risk, and that she might lose, and although he made no misrepresentation, the defendants are liable if Moore knowingly omitted material facts in what he said to her if such facts were necessary under the circumstances to make his statements to her not misleading. *See Hayden v. Walston & Co.*, 528 F.2d 901 (9th Cir.1975).

■ In the circumstances of this case Moore had a duty to explain the nature of short selling to Vucinich in a way that she could understand what she was getting into. Failure to perform that duty would amount to reckless violation of Section 10(b) of the Securities Exchange Act. *Kehr v. Smith Barney, Harris, Upham*

*and Co., Inc.*, 736 F.2d 1283, 1286 (9th Cir.1984). Such failure would also create liability for constructive fraud under California law. Cal.Civ.Code § 1575(1) (West 1982): *Twomey*, 262 Cal.App.2d at 720, 69 Cal.Rptr. 222.

In an explanation of the nature of short selling, the following information would have been relevant to Vucinich: that a short sale involved her borrowing stock that Paine, Webber had on hand; that maintenance of a short sale position required being able to meet margin calls; that her collateral would be drawn on by Paine, Webber and used up until it fell to the 50 percent margin requirement; that she would have to pay dividends if the borrowed stock paid dividends; that she would have to pay interest regularly as a debtor for the stocks borrowed; that the certain payment of interest and the probable payment of dividends would deplete her collateral and increase her vulnerability to a margin call; that short sales carry risks substantially different from ownership of common stocks; and that short selling is not normally what is meant by the phrase "capital gains objective."

For Moore to have fulfilled his duty, he would not have had to convey every bit of this information in exactly these terms but he would have to have conveyed the substance of this information in terms capable of being understood by someone of Vucinich's education and experience.

■ If Vucinich turned over to Moore the decisions as to which stocks she should sell short and when to sell them, and if during that period she routinely relied on his advice when to close out her short positions and did not have the education and experience to decide these matters herself, Moore was in a fiduciary relation to her and had a continuing duty to advise her of the nature and risks of short selling as set out in the preceding paragraph. *Mihara v. Dean Witter & Co., Inc.*, 619 F.2d 814, 821 (9th Cir.1980); *Twomey*, 262 Cal. App.2d at 690, 69 Cal.Rptr. 222. If he failed to do so or he failed to monitor her account carefully and to advise her when

the relative strength of the stock she had sold short appreciated so that her risk of a margin call was increased, Moore would also be liable for breach of his duty as a fiduciary under California law. *Mihara,* 619 F.2d at 821–22; *cf. Leboce, S.A. v. Merrill, Lynch, Pierce, Fenner & Smith,* 709 F.2d 605, 607 (9th Cir.1983).

▮ If Moore should be liable for breach of fiduciary duty, Paine, Webber would also be liable for breach of fiduciary duty. *Mihara,* 619 F.2d at 814. If Moore should be liable for constructive fraud, Paine, Webber would be liable for his tort. *Sharp v. Coopers & Lybrand,* 649 F.2d 175, 184 (3rd Cir.1981), *cert. denied* 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982). If Moore should be liable for violation of section 10(b), Paine, Webber would be liable for violation of section 20(a) of the Securities Exchange Act. *Hecht v. Harris Upham & Co.,* 430 F.2d 1202, 1210 (9th Cir.1970). If Moore should be liable for violation of section 10(b) or of breach of fiduciary duty or of constructive fraud, or all of these acts, Kite may be found to have approved or ratified his acts so that Paine, Webber may also be liable for punitive damages. *Hobbs v. Bateman Eichler,* 164 Cal.App.3d 174, 193, 210 Cal.Rptr. 387 (1985).

Kite has testified that he had a duty to supervise Moore and a duty to approve short sales. Moore has testified that Kite never discussed Vucinich's investment objectives with him. If these witnesses are believed, Paine, Webber may also be found by a jury to have been negligent in its supervision of Moore. *Hecht,* 430 F.2d at 1216. Further, if expert testimony establishes that the professional standards of brokers were not observed by Moore, both Moore and Paine, Webber may be found liable for professional negligence. *Cecka v. Beckman & Co.,* 28 Cal.App.3d 5, 11, 104 Cal.Rptr. 374 (1972).

▮ 3. We turn to the district judge's evidentiary rulings. Proffered evidence was excluded that would have related to another customer's complaint about short sales made by another broker in the Palm Desert office of Paine, Webber. The evidence might well have been confusing to the jury and prejudicial to the defendants; it was also hearsay. The trial court did not abuse its discretion in excluding it. Fed.R. Evid. 802.

▮ The rulings excluding the proffered testimony of plaintiff's expert on the securities business present a different complexion. Testimony concerning the rules of the New York Stock Exchange and of the National Association of Securities Dealers was highly relevant and far from prejudicial "because the rules reflect the standard to which all brokers are held." *Mihara,* 619 F.2d at 823–24. The trial judge apparently confused these rules with federal law, as to which federal judges are the authority. Not being civil law, these rules were proper matters for expert testimony. Exclusion was an abuse of discretion.

▮ The testimony excluded as to the suitability of the investments and the adequacy of the information conveyed was substantially the same as that already offered by expert deposition before the trial. Testimony otherwise admissible "is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed.R.Evid. 704. Testimony as to whether in the understanding of the industry the defendant had "control" of Vucinich's account would also have assisted the trier of fact "to understand the evidence" and was admissible under Federal Rule of Evidence 702. Exclusion of this evidence was an abuse of discretion.

▮ The district court also excluded expert testimony as to what the present value would be of the stocks in the portfolio Vucinich inherited. The established California measure of damages for breach of fiduciary duty "in advising plaintiff to switch into unsuitable investments" is the difference between what the plaintiff has now and what the plaintiff would have had on the date the fiduciary relation closed if plaintiff had retained the original portfolio and had received the benefit of its appreciation and dividends. *Hobbs,* 164 Cal.App.3d

at 197, 210 Cal.Rptr. 387. California rejects the view that such damages are conjectural or speculative and that the plaintiff might have done worse "if left to her own devices." *Twomey*, 262 Cal.App.2d at 731, 69 Cal.Rptr. 222. If the plaintiff is entitled to such damages, she is entitled to prove them. Expert testimony was an appropriate way to introduce a mathematical calculation that could as easily have been introduced by stipulation. In excluding the testimony the trial court abused its discretion.

Finally Vucinich objects to the quashing of a subpoena duces tecum directed at the manager of Paine, Webber's Palm Desert office and served less than twenty-four hours before trial. The subpoena was overbroad, asking for material bearing on the other unrelated party's complaint. The district court did not abuse its discretion here. We are confident that a more narrowly drawn subpoena directed at obtaining the Paine, Webber policy and procedures manual will not be quashed. Vucinich is also entitled to have access to the annual reports of Paine, Webber for the purpose of assessing punitive damages if the case should reach this stage. *Mihara*, 619 F.2d at 824. Subpoena of those reports to show Paine, Webber's net worth would be entirely proper. *Hobbs*, 164 Cal.App.3d at 196, 210 Cal.Rptr. 387.

Vucinich has asked that an order to show cause be issued why sanctions should not be imposed on defense counsel for their "deliberate invitation of reversible error" in the trial court. Vucinich has also asked for attorneys fees on this appeal and further, has requested that the case be assigned to a different trial judge. All of these requests are not unreasonable. In *Vucinich I* this court had held that the section 10(b) case presented an issue of fact and that the other claims were not necessarily barred by any statute of limitations. But defense counsel's arguments for a directed verdict did not cross the line into bad faith. *In re Beverly Hills Bancorp*, 752 F.2d 1334, 1340 (9th Cir.1984). In the very unlikely event that defense counsel's arguments for a directed verdict

should in the future invite the district court to ignore the law of the case, this court is prepared to award sanctions the imposition of which would require a review of counsel's conduct throughout the case. In view of the thorough explanation of the applicable law set forth above, we do not believe it is necessary at this time to order reassignment of the case to another judge.

REVERSED AND REMANDED.