LEBOCE, S.A., a Luxembourg corporation, Plaintiff-Appellant,

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., a corporation, and Does I—XX, inclusive, Defendants-Appellees.

No. CA 82–4521.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 18, 1983.

Decided July 1, 1983.

Ed. W. Hendren, James H. Pooley, Mosher, Pooley, Sullivan & Hendren, Palo Alto, Cal., for plaintiff-appellant.

James Hughes, W. Reece Bader, Orrick, Herrington & Sutcliffe, San Francisco, Cal., for defendants-appellees.

Before WRIGHT, CANBY, and BOOCHEVER, Circuit Judges.

CANBY, Circuit Judge.

Leboce, a Luxembourg investment holding company, placed an order with the San Jose, California, office of Merrill Lynch to sell Leboce's holdings of 44,000 shares of American Microsystems, Inc., a stock traded over-the-counter. The account executive handling Leboce's account, after communicating the order through channels to Merrill Lynch's New York office, accepted Merrill Lynch's own trading department's offer for the shares without knowing the source of the offer. Within a half an hour, Merrill Lynch began reselling the shares to other purchasers and turned a small profit.

The day following the sale, the account executive in the San Jose office learned that Merrill Lynch was a "market maker" in American Microsystems and had purchased the stock itself. He informed Leboce. At the same time, Merrill Lynch sent a written confirmation of the transaction to Leboce, indicating that Merrill Lynch had purchased the shares. Leboce then completed the transaction by delivering the share certificates to Merrill Lynch along with a letter stating that the delivery was without prejudice to any legal rights Leboce might have. Leboce subsequently sued Merrill Lynch claiming that California law required disclosure in advance of sale that a stockbroker acted as a principal in purchasing shares. Leboce further contended that federal securities law did not preempt state law. Following a bench trial on stipulated facts, the district court granted judgment for the defendants. Because, on these facts, California law does not require Merrill Lynch to disclose its role as purchaser any earlier than it did, we affirm.

## ANALYSIS

Federal regulations require that, prior to the completion of the transaction, a broker-dealer disclose that it purchased securities from a client or sold the client securities from its own account. In this case, because Leboce held the share certificates, the transaction was completed when the customer delivered the securities to the broker-dealer. S.E.C. Rule 15c1–1(b)(3), 17 C.F.R. § 240.15c1–1(b)(3) (1982). Merrill Lynch made a complete disclosure to Leboce prior to that time. Leboce concedes that Merrill Lynch complied with applicable federal securities laws. Nor does Leboce seriously dispute that it received a fair and efficient execution of its order at a price reasonably reflecting the market for such a sizeable block of shares. Moreover, Leboce admitted in oral argument that it could have rescinded the transaction when it learned that Merrill Lynch had purchased the shares itself. Nonetheless, Leboce contends that under California law, Merrill Lynch was a trustee and had an absolute duty to disclose its intent to purchase the shares prior to the sale. Because of the nondisclosure, Leboce demands that it be awarded Merrill Lynch's subsequent profits.

We assume for purposes of decision the correctness of Leboce's contention that any

applicable California law would not be preempted by federal statutes or regulations. Leboce has failed to show, however, that California law required more of Merrill Lynch than federal law in these circumstances.

Leboce argues that two California cases impose fiduciary duties on Merrill Lynch. We find these cases distinguishable. In the first, *Twomey v. Mitchum, Jones & Templeton, Inc.*, 262 Cal.App.2d 690, 69 Cal.Rptr. 222 (1968), the stockbrokers acted as investment counselors for the customer, a widow with no previous experience in securities. 69 Cal.Rptr. at 238. On the facts presented, the court found that a confidential relationship existed between the stockbroker and the client. Twomey's broker told her to sell her entire portfolio of stocks and mutual funds (at a loss) and then give the proceeds to him to invest for her. The broker then called her, almost daily for six months and less frequently for another six months to a year, with investment advice which she invariably followed. In addition, the widow had told the broker that her funds were "nonreplaceable" and that he should see that she would have a good income from them. *Id.* at 238–39.

In the other case, *Main v. Merrill Lynch, Pierce, Fenner & Smith*, 67 Cal.App.3d 19, 136 Cal.Rptr. 378 (1977), the elderly conservator of her invalid husband's estate sought investment counsel from a stockbroker. When she later brought an action against the stockbroker, it attempted to compel arbitration under a contractual clause governing the account. The complaint alleged that defendants, by virtue of the trust and confidence plaintiff reposed in them, had induced her to sign this contract without apprising her of the arbitration provision. Accepting the allegations of the complaint as true for purposes of the decision, the trial court denied the motion to compel arbitration and the appellate court affirmed.

In these and other cases where the California courts imposed fiduciary duties on stockbrokers, the customers alleged or proved that the broker also served as their investment counselor and, in most cases, had authority to make trades on the customers' accounts. *E.g., Walsh v. Hooker & Fay*, 212 Cal.App.2d 450, 28 Cal.Rptr. 16 (1963) (broker made false representations that induced plaintiff to buy securities); *Black v. Shearson, Hammill & Co.*, 266 Cal. App.2d 362, 72 Cal.Rptr. 157 (1968) (broker failed to disclose material fact affecting value of securities). *See also McMillian v. E.F. Hutton & Co. Inc.*, 399 F.Supp. 1153 (N.D.Cal.1975) (plaintiff accused broker of "churning"; broker had authority to make trades on customer's account). Several of these cases are decisions on motions to dismiss or for summary judgment where the courts accepted as true the plaintiffs' allegations of a fiduciary relationship. We have not found nor has Leboce cited to us any California cases imposing fiduciary duties on a broker in favor of an investor of Leboce's sophistication and independence.

It is where the agent "for all practical purposes" controls the account that California law imposes fiduciary obligations. *Twomey*, 69 Cal.Rptr. at 240. Leboce, however, did not rely on Merrill Lynch and no extensive fiduciary relationship existed. Merrill Lynch did make full disclosure; Leboce only disputes the timing of the disclosure. Leboce's investments were managed by Ralph Vaerst, a sophisticated professional investment consultant. Vaerst maintained control at all times over Leboce's accounts at Merrill Lynch and other stockbrokers with whom Leboce maintained accounts. Merrill Lynch had no authority to make trades on Leboce's account, nor did it offer the sort of investment advice to Leboce that might give rise to a fiduciary duty. Vaerst also received price quotations on American Microsystems stock from at least one other broker.

Vaerst understood the workings of the over-the-counter market as well as the post-transaction confirmation slip sent by Merrill Lynch in accordance with S.E.C. rules. Cases involving brokers who had practical control over the accounts of naive investors who did not understand a coded confirmation slip are not controlling here. *See, e.g.,*

*Twomey,* 69 Cal.Rptr. at 240 ("The post-transaction confirmation which is not understood or brought to the customer's attention cannot excuse the failure to fully advise the customer before the transaction, where as here, the agent for all practical purposes controls the purchases and sales in the account"); *Cant v. A.G. Becker & Co.,* 374 F.Supp. 36 (N.D.Ill.1974) (special relationship existed between broker and client for over 25 years; broker's coded confirmation slips insufficient disclosure of principal/principal transaction); *Berger v. Merrill Lynch, Pierce, Fenner & Smith,* 505 F.Supp. 192 (S.D.N.Y.1981) (plaintiff alleged that broker may have had reason to know customer would not be able to infer from confirmation slips that broker engaged in naked option transactions, rather than the safer covered options in which broker had traded for three years).

Merrill Lynch's duties to Leboce were limited by the narrow extent of its agency. Vaerst told the broker to sell a large block of American Microsystems "at market." Merrill Lynch's trading department made the best offer for the shares—indeed, the only offer. Leboce authorized Merrill Lynch to act as its agent with strictly limited responsibilities: to sell the stock expeditiously at the best price available and for a reasonable commission. Because Leboce did not show that Merrill Lynch breached any of these duties, and because Merrill Lynch made a full disclosure prior to completion of the sale, the district court correctly granted judgment for Merrill Lynch. *See Gammage v. Roberts, Scott & Co. Inc.,* [1974–1975 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,760 (S.D.Cal.1974) (no fiduciary duties under either California or federal law). *See also Parsons v. Hornblower & Weeks-Hemphill, Noyes,* 447 F.Supp. 482 (M.D.N.C.1977), *aff'd,* 571 F.2d 203 (4th Cir. 1978); *Batchelor v. Legg & Co.,* 52 F.R.D. 553 (D.Md.1971).

AFFIRMED.