In re REXPLORE, INC.
SECURITIES LITIGATION.

MDL No. 698.

United States District Court,
N.D. California.

Feb. 26, 1988.

Richard L. Jaeger and Helen Kang, of the law firm Feldman, Waldman & Kline, San Francisco, Cal., Martin R. Gold and Christine Lepera, of the law firm Gold, Farrell & Marks, New York City, Kenneth H. Stone, of the law firm Imhoff & Stone, San Diego, Cal., and Bryan R. Snyder, of the law firm Duke, Gerstel, Shearer & Bregante, San Diego, Cal., for plaintiffs.

Lorraine B. Moura of the law firm Buchalter, Nemer, Fields & Younger, San Francisco, Cal., Beatrice H. Salten–Smith, New York City, Sharon Chandler, of the law firm Lewis, D'Amato, Brisbois & Brisgaard, William Alderman of the law firm Orrick, Herrington & Sutcliffe, Esther Z. Hirsch, of the law firm Long & Levit of San Francisco, Cal., and Robert Lewin with Strooch, Strooch & Lavan of New York City, for defendants.

## MEMORANDUM DECISION AND ORDER RE: FOURTH AMENDED COMPLAINT

JENSEN, District Judge.

This litigation arises out of the sale of unregistered securities, specifically limited partnerships interests in several oil and gas partnerships sold by Rexplore, Inc.

On October 1, 1987, this Court issued an opinion addressing defendants' Motions to Dismiss the Third Amended Complaint. Before the Court at this time are defendants' Motions to Dismiss the Fourth Amended Complaint.

The pretrial proceedings in these actions are consolidated in this Court pursuant to

an order of the Judicial Panel on multi-district litigation. As in the previous Motions to Dismiss, the Court has designated the Complaint in *Noble v. Levine*, C–86–1448 DLJ, as the lead complaint.

## I.

In its previous Memorandum Decision and Order, this Court has set out in some detail the underlying facts of this litigation.

To briefly encapsulate, plaintiffs, investors in the various limited partnerships of Rexplore, Inc. brought these lawsuits subsequent to the collapse of the Rexplore limited partnerships, and the loss of their investments. Rexplore has declared bankruptcy.

Defendant Barclays American Business Credit Corp. ("Barclays") provided loans to the partnership. Defendants Forum Insurance Company ("Forum") and Mutual Fire and Marine Insurance Company ("Mutual Fire") secured the loans by surety bonds.

The *Noble* Complaint is based on transactions in Grayson County Oil & Gas Drilling Associates, Ltd. (the "Grayson deal.") A sales brochure for the Grayson deal directed inquiries to defendant Sentra Securities Corp. ("Sentra"), who sold the entire Grayson deal.

Defendant Horne, Nadler & Co. ("Horne"), an accounting firm, prepared the financial projections attached to the Private Placement Memorandum.

Defendant Ruffa & Hanover provided legal services and opinions for Rexplore regarding exemption of the securities.

Individual defendants Seyer and Levine were, respectively, Chairperson of Rexplore's Board, and Rexplore's President.

Defendants seek dismissal of the 24–count *Noble* complaint. The Court will address the dismissal motions defendant by defendant.

In considering these motions to dismiss, this Court is bound by the well-settled principle that a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957), *Cal. Dump Truck v. Associated General Contractors*, 562 F.2d 607, 614 (9th Cir. 1977).

## II

### BARCLAYS

Plaintiffs assert claims against Barclays for federal violations of Section 10(b)/Rule 10b–5 and Section 12(2) of the Securities Act. In addition, plaintiffs assert various pendent state claims.

### A. Section 10(b)/Rule 10b–5 and Colorado Rev.Stat. § 11–51–125(2): the First and Twenty–Second Claims

Plaintiffs' claim against Barclays, asserted for the first time in this litigation, alleges, in the alternative, primary liability for a violation of Section 10(b)/Rule 10b–5, and aider and abettor liability.

#### 1. Primary Violation by Barclays

To state a claim for a primary violation of Section 10(b)/Rule 10b5, plaintiffs must allege specific facts demonstrating that the defendant misrepresented or omitted to state material facts in connection with the purchase or sale of securities. *See, In re Gas Reclamation, Inc., Securities Litigation*, 659 F.Supp. 493, 502 (S.D. N.Y.1987).

Plaintiffs do not allege any specific facts demonstrating that Barclays made such misrepresentations or omissions with the requisite scienter. Plaintiffs therefore fail to state a claim against Barclays for a primary violation of Section 10(b)/Rule 10b5.

#### 2. Aiding and Abetting Liability

The elements necessary to state a claim for aiding and abetting a violation of Section 10/Rule 10b5 are:

1. the existence of an independent primary wrong;
2. actual knowledge by the alleged aider and abettor of the wrong and of his or her role in furthering it; and
3. substantial assistance in the wrong.

*Harmsen v. Smith,* 693 F.2d 932, 943 (9th Cir.1982), *cert. denied,* 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983), *also see, Orloff v. Allman,* 819 F.2d 904, 907 (9th Cir.1987).

The Complaint adequately alleges the existence of the underlying wrong: the sale of the interests in the Rexplore limited partnerships. In addition, the Complaint adequately alleges Barclays' substantial assistance in the wrong: without Barclays' funding of the limited partnerships there could have been no wrong.

The real issue, then, is whether plaintiffs have alleged sufficient facts which might support their claim that Barclays actually knew of the wrong and also, that funding it provided furthered that wrong. *See, Conley v. Gibson, supra,* 355 U.S. at 45, 78 S.Ct. at 101.

### a. *Barclays' Alleged Knowledge of the Wrong*

In paragraphs 50, 56, 57, and 58 of the Complaint, plaintiffs allege that Barclays drafted and approved portions of the offering materials included in the Offering Memoranda of the Limited Partnerships. Plaintiffs do not specify which "portions" of the offering materials such allegations encompass.

Barclays contends that these allegations can only refer to standard loan documentation included as part of the offering materials, and not to the Offering Memorandum itself, which allegedly contained various misrepresentations and omissions.

Plaintiffs also allege that Barclays financed Rexplore in an atypical manner. They allege that Barclays funded the limited partnerships without requiring or reviewing Rexplore's financial statements, overlooked irregularities in the Rexplore account, and participated in the commingling and transferring of funds among the limited partnerships. Plaintiffs argue that such atypical financing circumstantially demonstrates Barclays' knowledge of the wrong.

Barclays strenuously argues that it did nothing but provide routine loan services for Rexplore with no knowledge of the underlying fraud. Furthermore, Barclays contends that it could not be responsible for the commingling and transferring of funds, arguing that such a responsibility would require a duty on their part to monitor the use of the loan proceeds, exceeding their role as lender.

All that is before this Court for purposes of this motion are the pleadings. This Court is in no position, absent actual evidence, to determine the actual nature of either the portions of the Offering Memorandum which Barclays allegedly approved, or of the true nature of the "atypical" financing. This evidence will be before the Court and may be evaluated at a further stage in the litigation.

■ However, this Court is in a position to determine whether plaintiffs' factual allegations of Barclays' knowledge of the fraud and of its role in furthering the fraud suffice as a matter of pleading to survive a motion to dismiss. Taken as true, which this Court must, for purposes of a motion to dismiss, plaintiffs state a claim for aiding and abetting a violation of Section 10(b)/Rule 10b5.

One might reasonably infer knowledge from the facts alleged concerning review of the offering materials, and of atypical financing. If Barclays engaged in nothing other than standard commercial transactions, no inference could be drawn of their knowledge of the underlying wrong. If, however, as plaintiffs allege, the transactions, particularly the methods of loan financing, were atypical or lacking in any business justification, it may be possible to circumstantially infer the knowledge necessary to prove aiding and abetting liability. *See, In re Gas Reclamation, Inc. Securities Litigation,* 659 F.Supp. 493, 503–504 (S.D.N.Y.1987), *Woodward v. Metro Bank of Dallas,* 522 F.2d 84 (5th Cir.1975).

Barclays' contention that plaintiffs' allegations refer only to standard commercial activities may be more properly addressed in a Motion for Summary Judgment, when evidence, rather than allegations, are before the Court. For purposes of a Motion to Dismiss, this Court must assume that plaintiffs' allegations of significant and ac-

tive knowledge are valid. Plaintiffs adequately plead facts which support the inference that Barclays knew of the underlying wrong.

Accordingly, this Court finds that plaintiffs have sufficiently pled aider and abettor liability for a violation of Section 10(b)/Rule 10b5 as well as for a violation of its Colorado analog, the twenty-second claim, to withstand the motion to dismiss. Barclays' motion to dismiss these claims is DENIED.

### B. Section 12(2) and Colo.Rev.Stat. 11–51–125: the Third and Twenty–Third Claims

#### 1. Barclay's Status as a Seller

In its October, 1987 Order, this Court dismissed the Section 12(2) claim against Barclays and granted plaintiffs leave to amend to allege sufficient facts which would demonstrate Barclays' status as a seller of securities within the meaning of Section 12(2) of the Securities Act.

Section 12(2) imposes liability for selling a security by means of a prospectus or oral communication containing an untrue statement of material fact or a material omission of a fact needed to make the statement not misleading. Only sellers of securities are liable for violations of Section 12.

In the Ninth Circuit the term "seller" for purposes of section 12 includes "participants" whose acts are "both necessary to and a substantial factor in the sale transaction." *Admiralty Fund v. Jones*, 677 F.2d 1289, 1294 (9th Cir.1982).

A defendant is a substantial factor in the sale transaction when "the injury to the plaintiff flowed directly and proximately from the actions of the defendant." *Id.* Mere participation is insufficient; conduct indicating culpability is required. *In re Fortune Systems Securities Litigation*, 604 F.Supp. 150, 151, 161 (N.D.Cal.1983).

Plaintiffs now allege that Barclays' participation in the review, drafting, and approval of the offering materials bring them within the definition of seller and thus liability for a violation of Section 12(2). This Court's October Order held that partic-

ipation in the review, approval, or drafting of the Private Placement Memorandum, along with facts demonstrating that the association between the participant and the actual sellers was closer than that expected of a party merely providing routine business services, would survive a motion to dismiss. *Order*, at 14.

As addressed *supra*, under the discussion of aider and abettor liability for a violation of Section 10(b)/Rule 10b5, whether or not Barclays' participation proves to be innocent, because it merely provided routine business services, is not for the Court to determine at this time, for purposes of a motion to dismiss. For these purposes, the Court must assume that plaintiffs' allegations of significant and actual participation are valid. *See, In re Gas Reclamation, Inc. Securities Litigation, supra*, at 509.

Thus, plaintiffs adequately plead Barclays' status as a seller to fall within the scope of liability for a violation of Section 12(2).

#### 2. The Statute of Limitations Issue

Section 13 of the 1933 Act sets forth the limitations period for 12(2). Actions must be brought under this Section within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of due diligence.

Plaintiffs rely upon the equitable tolling doctrine to avoid the one year limitations period applicable to the Section 12(2) claim. A federal statute of limitations is equitably tolled when the plaintiff remains in ignorance of his cause of action because defendants fraudulently concealed facts material to plaintiff's claim. *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946).

This Court's October Order did not address the issue of whether the statute of limitations was equitably tolled as to Barclays. However, this Court did hold that the statute of limitations was equitably tolled as to defendants Seyer and Levine, and Sentra, whose assurances to plaintiffs

"lulled them into thinking that the problems were being solved." *Order* at 20.

Plaintiffs have not alleged any similar affirmative conduct on the part of defendant Barclays. In the October Order, this Court adopted the view that "a passive partner in concealment may be subject to the discovery rule of section 13 where its relationship with the plaintiff imposes a duty to disclose, (cite omitted) or a conspiracy exists through which the affirmative conduct of fraudulent concealment of one defendant may be attributed to the others." *Order* at 19.

■ Upon a reconsideration of this view, this Court finds that where one defendant has fraudulently concealed that a cause of action exists, resulting in the "lulling" of the plaintiff, the issue then becomes whether the plaintiffs fulfill the "due diligence" requirement of Section 13 of the 1933 Act, 15 U.S.C. § 77m. *See, Erickson v. Kiddie*, [Current] Fed.Sec.L.Rep. (CCH) ¶ 93, 205 at 95,960 (N.D.Cal.1986) [available on WESTLAW, 1986 WL 15654].

■ The one year running of the statute of limitations begins when a plaintiff has enough notice of the possible wrongdoing to require that he exercise a due diligence inquiry. However, once one defendant engages in fraudulent conduct which actually lulls the plaintiff into inaction, such fraudulent conduct removes plaintiff's duty to inquire of each other defendant whether a cause of action exists.

To hold otherwise would require plaintiffs to engage in a due diligence inquiry that they could never reasonably know necessary. Such a result would impose an impossible burden on plaintiffs.

Therefore, this Court rejects the view that each defendant must independently engage in affirmative acts of fraudulent concealment in order for the doctrine of equitable tolling to apply to that defendant. This Court adopts the view that once the plaintiff has been lulled into inaction by the fraudulent concealment of one defendant, the statute of limitations is tolled as to all the defendants. This is particularly the case where, as here, the defendants who allegedly engaged in fraudulent concealment were those in contact with plaintiffs.

Seyer and Levine's, as well as Sentra's, actions in February and March of 1985, assuring plaintiffs that any payment delays stemmed from bad weather and short-term cash problems, resulted in plaintiffs' assumption that the problems had been caused by mismanagement, rather than fraud. *See, Order* at 20–21.

■ Due diligence requires plaintiffs to make a reasonable inquiry about their investment and to take affirmative steps to inform themselves of the facts. *See Erickson v. Kiddie, supra.* At this stage of the litigation this Court cannot state that, in light of the fraudulent concealment, due diligence would have required that plaintiffs inquire of each defendant, including Barclays, about the status of Rexplore. Therefore, Barclays has failed to demonstrate that plaintiffs' claim against them for a violation of Section 12(2) is time-barred.

Barclays' motion to dismiss the Third Claim and its Colorado analog, the Twenty-Third Claim, is DENIED.

## C. The Usury Claim: the Tenth Claim

Plaintiffs assert in the Tenth Claim that the combination of interest and financing fees charged by Barclays on the promissory notes exceeded that allowed by California law.

The Grayson promissory notes contained a choice of law clause stating that Kentucky law governs. Thus, Barclays contends, plaintiffs cannot state a cause of action relying on California law.

■ This Court must apply the choice of law rules of California because it is the forum for these consolidated actions. *Gee v. Tenneco, Inc.*, 615 F.2d 857, 861 (9th Cir.1980). Applying those rules, this Court cannot, as a matter of law, hold valid the choice of law clause contained in the promissory notes.

In a recent decision, in the context of a usury claim based on a promissory note, the California Court of Appeals held that the question of choice of law is a factual

issue which can only be determined after an evidentiary hearing. *Mencor Enterprises, Inc. v. Hets Equities Corp.*, 190 Cal.App.3d 432, 441, 235 Cal.Rptr. 464 (1987).

Accordingly, this Court cannot dismiss this claim on the basis that Kentucky usury law, rather than California law, applies. The determination of whether to apply Kentucky or California law to the usury claim will be determined at a later stage in the litigation when evidence is before the Court.

Barclays further contends that they made no loan of money within the meaning of the usury laws to the investors, but only a "sale on credit", which is exempt from the usury laws.

■ However, under California law, the question of whether a particular transaction is or is not usurious is a question of fact. The Court must examine more than the parties' characterization of the transaction to ascertain its substance. *Forte v. Nolfi*, 25 Cal.App.3d 656, 678, 102 Cal.Rptr. 455 (1972).

Accordingly, plaintiffs' cause of action for a violation of California usury law survives Barclays' motion to dismiss. Barclays' motion to dismiss the usury claim is DENIED.

### D. The California claims pursuant to California Corporation Code §§ 25110, 25503, 25504 and 25504.1: The Eleventh Claim

Sections 25110 and 25503 of the California Corporate Code (the California analogs to Section 12(1) of the Securities Act of 1933) impose liability for selling qualified securities which have not been exempted. Sections 25504 and 25504.1 provide for joint and several liability for a violation of Sections 25110 and 25503 for "any person who materially assists in any violation ... with intent to deceive or defraud."

For the same reasons as stated in the above analysis of the allegations of the Section 12(2) violation, this Court finds that plaintiffs have sufficiently alleged facts demonstrating Barclays' participation in the sale of the unregistered securities to survive a motion to dismiss.

Barclays argues that this claim is time-barred. In its October 1987 Order, this Court dismissed with prejudice the Section 12(1) claim, holding that the equitable tolling doctrine was not intended to apply to section 12(1) claims.

However, equitable tolling does apply to the California analog to Section 12(1). California Corporations Code § 25507 provides that no action shall be maintained to enforce liability created under Section 25503 unless brought within two years after the violation, or one year after discovery.

In *Sherman v. Lloyd*, 181 Cal.App.3d 693, 226 Cal.Rptr. 495 (1986), the California Court of Appeals held that the statute of limitations was tolled where plaintiff, a limited partner, relied on a general partner's advice that a security was exempt and therefore not required to be qualified. The cause of action began to accrue when plaintiff learned from his attorney that the investment structure may have been improper. *Id.*, at 700, 226 Cal.Rptr. 495.

■ The facts in *Sherman* are similar to the facts of this case. Plaintiffs relied on the Offering Memorandum, which, despite disclaimers, stated that qualification under state securities laws was unnecessary. Plaintiffs filed their complaint within a year after consulting with attorneys in 1985. Accordingly, Barclays has failed to establish that plaintiffs' claims under the California securities laws are time-barred.

Barclays' motion to dismiss the Eleventh Claim is DENIED.

### E. Common Law Fraud: the Fourteenth Claim

Barclays moves to dismiss the claim for common law fraud, newly asserted against them in the Fourth Amended Complaint, on the basis that plaintiffs fail to satisfy Fed. R.Civ.P. 9(b)'s requirement of particularity. Barclays stresses that no particular omission or misrepresentation is alleged in the Complaint.

However, the Ninth Circuit has held that Rule 9(b) requires:

particularity in pleading the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations ... (cites omitted) While mere conclusory allegations of fraud are insufficient, statements of the time, place and nature of the alleged fraudulent activities are sufficient.

*Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir.1987).

■ Whether or not plaintiffs will ultimately prove that Barclays misrepresented or omitted material facts, they clearly have adequately pled the "circumstances constituting fraud," namely, that Barclays actively participated in the preparation and review of offering materials. As stated above, whether the offering materials were simply standard loan documentation will be more properly considered by the Court later, when evidence is before it in a motion for summary judgment.

Accordingly, Barclays' motion to dismiss the claim for common law fraud is DENIED.

### F. Breach of Fiduciary Duty: the Fifteenth Claim

This Court's October Order dismissed this claim against Barclays with leave to amend to allow plaintiffs to allege facts sufficient to demonstrate that Barclays owed them a fiduciary duty.

Plaintiffs have not introduced any new facts in the *Fourth Amended Complaint* to support their theory that Barclays owed them a fiduciary duty. Plaintiffs' argument, that the law imposes a fiduciary duty *anytime* a relationship of trust and confidence exists, would result in the imposition of a fiduciary duty in nearly every contractual setting. Clearly, the law does not extend this far.

■ Plaintiffs' reliance on *Barrett v. Bank of America*, 183 Cal.App.3d 1362, 229 Cal.Rptr. 16 (1986) is misplaced. The *Barrett* Court found a "quasi-fiduciary" relationship where plaintiffs had face-to-face dealings with a loan officer, gave him confidential information, and substantially relied on his advice. *Id.* at 1369, 229 Cal.

Rptr. 16. No such close relationship existed between the investors and Barclays. While Barclays' financing may have lent credibility to the limited partnerships, this in and of itself does not create the trust and confidence necessary to establish a relationship which gives rise to a fiduciary duty.

Accordingly, the Fifteenth Claim, for a breach of fiduciary duty, is DISMISSED WITH PREJUDICE as to defendant Barclays.

### G. Claims for Negligence and Negligent Misrepresentation: the Seventeenth and Eighteenth Claims

Barclays moves to dismiss this claim, arguing that they owed no duty of due care to plaintiffs. Before there can be a breach of duty, plaintiffs must establish that defendants had a duty to exercise due care. *Prosser & Keeton on Torts*, § 30 at 164 (5th Ed.1984).

However, duty is no longer defined by privity, but rather by the reasonable foreseeability of harm to plaintiffs. *Rowland v. Christian*, 69 Cal.2d 108, 112, 70 Cal. Rptr. 97, 443 P.2d 561 (1968).

■ As it was reasonably foreseeable that Barclays' failure to exercise due care in the funding of Rexplore would lead to injury to the investors, plaintiffs have established that Barclays owed a duty of due care. The issue of whether Barclays actually breached that duty is a burden of proof, not of pleading, more properly addressed at a future stage of this litigation.

Accordingly, Barclays' motion to dismiss the claims for negligence and negligent misrepresentation are DENIED.

### III.

### DEFENDANTS SEYER AND LEVINE

### A. Sections 15 and 20 of the Securities Act: the Fifth and Sixth Claims

Section 20 of the Exchange Act imposes liability on controlling persons for violations of Section 10(b) and Rule 10b5. Section 15 of the Exchange Act imposes liabili-

ty on controlling persons for violations of Section 12(2).

Defendants Frank H. Seyer, Rexplore's Chairperson of the Board, and Richard G. Levine, Rexplore's President, contend that since other individuals were involved in all of the acts complained of in the Complaint, plaintiffs fail to sufficiently allege how Seyer and Levine individually controlled the enterprise or the actions of other defendants.

However, whether a defendant is a controlling person within the meaning of Sections 15 and 20 is a complex factual question. *Kersh v. General Council of Assemblies of God*, 804 F.2d 546, 548–549 (9th Cir.1986). As such, it is a question appropriately reserved for a time when the Court may evaluate evidence.

Accordingly, Seyer and Levine's motion to dismiss the Fifth and Sixth claims is DENIED.

### B. RICO: § 1962(c) and its Colorado Analog: the Seventh and Twenty–Fourth Claim

This Court's October Order dismissed this claim with leave to amend. The Court found that while plaintiffs sufficiently alleged a RICO enterprise, a racketeering pattern, and predicate acts, plaintiffs failed to meet the requirements of Rule 9(b). This Court granted leave to amend solely to allege the predicate acts of mail and wire fraud with particularity. *Order*, at 26–27.

Plaintiffs have satisfied their burden. They list six predicate acts of mail and wire fraud. *Fourth Amended Complaint*, ¶ 106(a)–(f). Because this information enables defendants to file a meaningful answer, plaintiffs' allegations are sufficiently specific to satisfy Rule 9(b). *See, Sun Sav. and Loan Ass'n v. Dierdorff*, 825 F.2d 187, 196 (9th Cir.1987).

Accordingly, defendants' motion to dismiss the Seventh Claim, based on RICO § 1962(c), and the Twenty–Fourth Claim, based on its Colorado analog, is DENIED.

### C. RICO: § 1962(a) and its Colorado Analog: the Eighth and Twenty–Fifth Claims

RICO Section 1962(a) prohibits the use of income derived from a pattern of racketeering activity in the acquisition, establishment, or operation of any enterprise engaged in interstate racketeering activities. In its October Order, this Court agreed with those courts which have:

> limited recovery under this subsection to plaintiffs who have sustained injury specifically as a result of the prohibited investment ... not necessarily all who have suffered from the predicate racketeering activity have thereby been injured by the investment of the proceeds.

*Order*, at 28.

This Court dismissed the claim for a violation of RICO § 1962(a) with leave to amend, to allow plaintiffs to allege facts showing that the use or investment of the racketeering proceeds caused plaintiffs' injury.

The Amended Complaint alleges that Rexplore's payment of fees and commissions to the other defendants caused injury by giving the other defendants incentive to continue their support of Rexplore. Plaintiffs theorize that this continued funding, servicing, and legal work in turn resulted in further injury by prolonging the existence of Rexplore.

In the view of this Court, plaintiffs' amendment does not satisfy the requirement of Section 1962(a) that plaintiffs' injury be caused by the use or investment of racketeering proceeds. What plaintiffs really complain of is injury due to the underlying, predicate acts of fraud, which states a claim for a violation of Section 1962(c), rather than Section 1962(a).

Under Section 1962(c), an allegation of a pattern of racketeering activity which causes injury to plaintiff sufficiently states a cause of action. By contrast, the gravamen of the offense under Section 1962(a) is not the underlying racketeering activity itself, but the subsequent use and investment of proceeds obtained through the racketeering activity. *Eastern Corporate*

*Fed. Cred. v. Peat, Marwick, Etc.*, 639 F.Supp. 1532, 1537 (D.Mass.1986).

18 U.S.C. § 1964(c) provides a private right of action to persons injured "by reason of a violation of section 1962". To state a claim under Section 1964(c) for a violation of Section 1962(a), plaintiff must satisfy all of the elements of § 1962(a), including the element of causation: injury by the use or investment of the proceeds. Plaintiff's standing exists only to the extent that the conduct constituting the violation caused injury to his business or property. *Sedima, S.P.R.L., v. Imrex*, 473 U.S. 479, 105 S.Ct. 3275, 3285–86, 87 L.Ed.2d 346 (1985).

In a case based on similar facts, investor plaintiffs were allowed to amend their complaint to demonstrate how the use or investment of racketeering proceeds caused their injury pursuant to § 1962(a). *DeMuro v. E.F. Hutton*, 643 F.Supp. 63 (S.D.N.Y.1986).

In their amendment, the *DeMuro* plaintiffs contended that the racketeering proceeds were used to pay brokers' commissions, "thereby creating the incentive for, and rewarding successful completion of the fraud." *DeMuro v. E.F. Hutton*, 662 F.Supp. 308 (S.D.N.Y.1986). The Court granted the motion to dismiss this claim, stating:

> [t]he contention that paying brokers' commissions and financing the operation of an office is sufficient to state a cause of action under 18 U.S.C. § 1962(a) would turn every churning case into a RICO case.

*Id.* at 309.

This Court agrees with the *DeMuro* Court that to hold the payment of fees and commissions sufficient to state a claim under Section 1962(a) would "involve a vast and unwarranted extension of the boundaries of civil RICO". *Id.*

Plaintiffs contend that their Section 1962(a) injury was caused by the fact that the fees and commissions kept Rexplore alive. Plaintiffs merely restate that the predicate acts of fraud caused the injury. Plaintiffs already have a cause of action

for this alleged injury pursuant to Section 1962(c).

Accordingly, the Eighth Claim, for a violation of § 1962(a), and its Colorado analog, the Twenty–Fifth Claim, is DISMISSED with prejudice as to all defendants.

### D. The California Securities Claims: the Eleventh and Twelfth Claims

Defendants Seyer and Levine move for dismissal of the eleventh claim, the California analog to Section 12(1), on the basis that it is time-barred. For the reasons stated above in the analysis of this claim as to defendant Barclays, this Court finds that, for purposes of a motion to dismiss, this claim is not time-barred.

Accordingly, Seyer and Levine's motion to dismiss the Eleventh Claim is DENIED.

Defendants also move for the dismissal of the Twelfth claim, based upon California Corporations Code §§ 25401, 25501 and 25504, the California analog to Section 12(2). Defendants argue that they are not sellers within the meaning of these sections of the California code because Sentra actually sold all the interests.

However, California Corporation Code § 25504.1 provides for the liability of "any person who materially assists in any violation of … § 25401." Whether defendants Seyer and Levine materially assisted in this violation is an issue of fact.

Accordingly, defendants Seyer and Levine's motion to dismiss the Eleventh and Twelfth claims, based on California securities laws, is DENIED.

### IV.

### SENTRA

#### A. Motion for Reconsideration of the 10(b) and 12(2) claims and their Colorado analogs: the First, Third, Twenty–Second, and Twenty–Third Claims

Sentra Securities Corporation ("Sentra") brings what is essentially a motion for reconsideration of this Court's October Order in reference to the 10(b) and 12(2) claims.

Sentra bases its argument on the statements at pages 2 and 5 of this Court's

October Order that "Sentra Securities Corp. ("Sentra") acted as a broker for Rexplore" and that the "Memorandum itself names Sentra as the representative of Rexplore to whom inquiries should be addressed." Sentra contends that it never acted as the broker for Rexplore, and that the Memorandum did not direct inquiries to Sentra.

By this Order, this Court corrects these factual misstatements. Sentra was not Rexplore's exclusive broker. However, whether Sentra acted as Rexplore's broker or was named in the Offering Memorandum, the fact is that Sentra sold the entire Grayson deal.

In addition, Sentra's relationship with Rexplore dated back to 1982, Sentra brokered limited partnership units in fourteen Rexplore-affiliated partnerships, and Sentra initially contacted potential investors about the Grayson limited partnership. Finally, a Grayson sales brochure (not the Offering Memorandum, as stated in the October *Order*), directed inquiries to Sentra.

■ Thus, this Court's previous conclusion remains valid. Plaintiffs sufficiently allege all of the elements of a claim against Sentra for a violation of Section 10(b)/Rule 10b–5 on the basis that Sentra:

misrepresented or omitted to state material facts in connection with the purchase or sale of a security, that plaintiffs justifiably relied upon the misrepresentations or omissions, and that the misrepresentations and omissions were made with scienter.

*Order* at 2–3.

This Court also declines to reconsider its ruling on the equitable tolling issue as to the Third Claim, regarding a violation of Section 12(2). Plaintiffs sufficiently allege that Sentra's assurances and conduct lulled them into believing that they did not have a cause of action.

### B. Fiduciary Duty: the Fifteenth Claim

Sentra moves to dismiss this claim, asserting that plaintiffs pled in conclusory terms Sentra's fiduciary relationship and duty towards plaintiffs.

■ California courts impose fiduciary duties on a stockbroker only in instances when the broker controls a plaintiff's account. *Leboce, S.A. v. Merrill Lynch, Pierce, Fenner, Etc.*, 709 F.2d 605, 607 (9th Cir.1983). Factors such as the investor's sophistication and independence weigh into the determination of fiduciary duty. *Id.*

As control over an investor's account is an issue of fact, this Court can more properly evaluate in a motion for summary judgment how much control Sentra exercised over plaintiffs' accounts, and as a result, whether Sentra owed any fiduciary duty to plaintiffs.

Accordingly, Sentra's motion to dismiss the Fifteenth Claim is DENIED.

### C. Other Claims as to Sentra

For the reasons stated above, this Court DENIES Sentra's motion to dismiss the seventh and twenty-fourth claims, for a violation of Section 1962(c) and its Colorado analog. In ¶¶ 105(b) and (c) of the Complaint, plaintiffs specify how Sentra participated in predicate acts of wire and mail fraud.

In addition, for reasons stated above, this Court DENIES Sentra's motion to dismiss the Eleventh and Twelfth claims, for violations of the California Securities laws, the Fourteenth claim, for common law fraud, and the Seventeenth and Eighteenth claims, for negligence and negligent misrepresentation.

For the reasons stated above, this Court GRANTS Sentra's motion to dismiss the eighth and twenty-fifth claims, based on RICO Section 1962(a) and its Colorado analog. These claims are dismissed with prejudice.

### V.

### RUFFA & HANOVER

This is the first time that lawfirm defendant Ruffa & Hanover ("Ruffa") has been required to respond to the lead Complaint. However, plaintiffs named Ruffa

as a defendant in the *Kovacks, Berry,* and *Akazawa* complaints.

Plaintiffs allege that Ruffa prepared some of the offering materials, provided opinions that the interests were exempt from federal and state registration and qualification requirements, and received fees for these services.

### A. The Section 10(b)/Rule 10b5 Claim

#### 1. The Statute of Limitations

Ruffa initially argues that this claim is time-barred. The statute of limitations for an action brought for a violation of Section 10(b)/Rule 10b5 is three years from the date plaintiff has sufficient notice to impose a duty to inquire about the fraud. *McConnell v. Frank Howard Allen & Co.,* 574 F.Supp. 781, 787 (N.D.Cal.1983).

Even setting this discovery date as early as February 1985 (which this Court declined to do in its October Order), when plaintiffs first became alarmed about their investments, plaintiffs' filing of the claim against Ruffa in November, 1987, is well within the three year discovery limit. Accordingly, the claim is not time-barred.

#### 2. The Sufficiency of the Section 10(b)/Rule 10b5 Claim

Ruffa also argues that it made no misrepresentations or omissions. Ruffa contends that its legal opinion stating that the offering was exempt constituted no misrepresentation because the offering *was* exempt.

However, whether or not the offering was exempt from the registration requirements of the Securities and Exchange Commission is an issue of fact that this Court cannot address in a motion to dismiss. Plaintiffs have sufficiently pled that the offering was not exempt in ¶ 69 of the Complaint. For purposes of a motion to dismiss, this Court must accept plaintiffs allegations of non-exemption as true.

Ruffa next contends that 1.) it did not misrepresent the fact that the offering was

not integrated since the offering was not necessarily integrated, and 2.) even if the offering were not integrated, this fact should have been apparent to the investors from the face of the Offering Memorandum, which stated that fourteen other limited partnerships existed.[1]

However, plaintiffs sufficiently plead integration in ¶ 49 of the Complaint, where they allege that "[e]ach of the Limited Partnerships was part of a single, interrelated and integrated business purportedly engaged in the development of oil and/or gas wells." Paragraph 49 continues, enumerating the similarities of each of the offering.

Ruffa also disputes plaintiffs' allegation that Ruffa misrepresented the previous performances of other Rexplore limited partnerships' previous performances. Ruffa contends that it was in no position to know about the previous performances.

Ruffa finally contends that its failure to disclose a prior interest in the Station Camp limited partnership is immaterial, since Ruffa was not in a management position.

■ These allegations present factual issues which the Court should resolve in a motion for summary judgment. For purposes of a motion to dismiss, plaintiffs have adequately pled the elements of a Rule 10(b)/Section 10b5 cause of action. Accordingly, Ruffa's motion to dismiss this claim is DENIED.

### B. The Section 12(2) Claim and its Colorado Analog: the Third and Twenty–Third Claims

15 U.S.C. § 77m provides the relevant statute of limitations for violations of Section 12(2):

> ... in no event shall any action be brought to enforce a liability ... under section 12(2) ... more than three years after the sale.

---

1. Under this theory, defendants argue that the 10(b) claim would be time-barred since discovery would date from the publication of the Offering Memorandum in July, 1984. This Court has already considered and rejected this theory when it addressed plaintiffs' justifiable reliance on the Offering Memorandum. *See, Order* at 11.

The three year bar provided for by this statute is absolute. *Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1308 (9th Cir.1982).

The *Fourth Amended Complaint*, filed on November 4, 1987, named Ruffa as a defendant for the first time. This occurred more than three years after the closing of the *Grayson* limited partnership in October 1984. The Grayson sales formed the basis for the *Noble* complaint.

To circumvent this time-bar, plaintiffs argue that claims against Ruffa should "relate back" to the original pleading in 1986 pursuant to Fed.R.Civ.P. 15(c). The four criterion for "relation back" are:

1. the basic claim must have arisen out of the conduct set forth in the original pleading;
2. the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense;
3. that party must have known that, but for a mistake concerning identity, the action would have been brought against it;
4. the second and third requirements must have been fulfilled within the prescribed limitations period.

*Schiavone v. Fortune, aka Time, Inc.*, 477 U.S. 21, 106 S.Ct. 2379, 2384, 91 L.Ed.2d 18 (1986).

 Concentrating on the third requirement, "but for a mistake concerning identity", this Court cannot adopt plaintiffs' novel argument that culpability constitutes identity. Plaintiffs argue that even though they knew that Ruffa provided legal services for Rexplore from the beginning of the litigation[2], they did not know of Ruffa's identity in terms of culpability.

This is an unprecedented and unwarranted extension of Rule 15(c). As the Ninth Circuit has stated:

Rule 15(c) was intended to protect a plaintiff who mistakenly names a party and then discovers, after the relevant statute of limitations has run, the identi-

ty of the proper party. Rule 15(c) was never intended to assist a plaintiff who ignores or fails to respond in a reasonable fashion to notice of a potential party, nor was it intended to permit a plaintiff to engage in piecemeal litigation. (cites omitted)

*Kilkenny v. Arco Marine Inc.*, 800 F.2d 853, 857–58 (9th Cir.1986).

As did the defendant in *Kilkenney, id.*, Ruffa could have reasonably concluded that plaintiffs did not name it as a defendant within the relevant statute of limitations period due to strategic considerations. Accordingly, Ruffa & Hanover's motion to dismiss the third claim, for a violation of Section 12(2), and its Colorado counterpart, the Twenty–Third Claim, is GRANTED. These claims are dismissed as to Ruffa WITH PREJUDICE.

### C. The Claim by California Plaintiffs for a Violation of California Corporations Code § 25504.2: the Thirteenth Claim

California Corporations Code § 25506.1 sets the outside limit for bringing a claim pursuant to Section 25504.2:

In no event shall any action be brought more than three years after the act or transaction constituting the violation.

The act giving rise to liability under this Code section is Ruffa's alleged participation in and endorsement of the Offering Memorandum. Since the Offering Memorandum was dated July 27, 1984, and plaintiffs did not file the *Fourth Amended Complaint* until November 4, 1987, this claim is absolutely time-barred.

Accordingly, the thirteenth claim, for a violation of Cal.Corp.Code § 25504.2, is DISMISSED WITH PREJUDICE.

### D. The Claim for Legal Malpractice and Breach of Fiduciary Duty: the Sixteenth Claim

California Code of Civil Procedure § 340.6 provides that a cause of action

---

**2.** In fact, Ruffa was originally named in three complaints: the *Kovacks, Berry,* and *Akazawa* complaints.

against an attorney for legal malpractice must be commenced within one year after the plaintiff discovers, or should have discovered through due diligence, the facts constituting the malpractice.

Plaintiffs consulted an attorney in the winter of 1985, and filed their original complaint in March, 1986. At that time, plaintiffs asserted a cause of action for violation of Section 12 of the Securities Act. Section 12(1) renders a person or entity liable for selling, without registration, a security that the Act requires to be registered. Section 12(2) imposes liability for selling a security by means of a prospectus or oral communication containing an untrue statement of material fact or a material omission of fact needed to make the statement not misleading.

When plaintiffs filed their first complaint and asserted the Section 12 claims based on Rexplore's failure to register the interests, they knew that Ruffa and Hanover acted as Rexplore's counsel. Memorandum of Points and Authorities of Plaintiffs in Opposition to Defendant Ruffa and Hanover's Motion, at 7.

 It would have taken no great leap of the imagination to deduce that Rexplore's attorneys must have had some role in advising Rexplore on the necessity of registration. Thus, plaintiffs have failed to establish the use of reasonable diligence. Their claim against Ruffa for legal malpractice is time-barred for failure to bring within one year after the claim should have been discovered through the use of reasonable diligence.

In addition, plaintiffs have not alleged any facts demonstrating a fiduciary duty on Ruffa's part. The case plaintiffs rely on in support of their theory, *St. Paul Title v. Meier*, 181 Cal.App.3d 948, 226 Cal.Rptr. 538 (1986), does not address the issue of fiduciary duty. *St. Paul Title* merely holds that an attorney's liability for professional negligence may extend to third parties in certain limited instances, not that an attorney owes a fiduciary duty in those instances.

Accordingly, plaintiffs' sixteenth claim against Ruffa and Hanover, for profession-al malpractice and breach of fiduciary duty, is DISMISSED with prejudice.

### E. The Negligence Claims: the Seventeenth and Eighteenth Claims

 Ruffa argues that it owed no duty of due care to plaintiffs. However, an attorney may be liable to third parties for negligence when the third parties are intended beneficiaries or otherwise when harm to plaintiffs is foreseeable. *St. Paul Title v. Meier, id.,* at 951, 226 Cal.Rptr. 538.

In *Roberts v. Ball, Hunt, Hart, Brown & Baerwitz,* 57 Cal.App.3d 104, 128 Cal. Rptr. 901 (1976), a law firm was held liable for negligent misrepresentation in furnishing a letter containing misleading information to its client, knowing the letter would be shown to a prospective lender in order to obtain a loan.

 Ruffa should have reasonably known that its legal advice on exemption would be used to solicit investors in the limited partnerships. Thus, they owed a duty of due care to plaintiffs. Whether Ruffa breached that duty is an issue of fact that may not be disposed of in a motion to dismiss.

Accordingly, Ruffa's motion to dismiss the claims for negligence and negligent misrepresentation is DENIED.

### F. The RICO claims: the Seventh, Eighth, Twenty–Fourth, and Twenty Fifth Claims

For the reasons stated above, this Court GRANTS Ruffa's motion to dismiss the Eighth claim, for a violation of RICO Section 1962(a) and its Colorado analog, the Twenty–Fifth claim. These claims are DISMISSED with prejudice.

Addressing the Section 1962(c) claim, plaintiffs have alleged in ¶ 105(a) of the Complaint that Ruffa engaged in the predicate act of wire fraud. Accordingly, plaintiffs have met their Rule 9(b) pleading burden, to state the predicate acts with specificity.

In addition, plaintiffs have adequately pled the existence of an enterprise, Rexplore, which has an existence distinct from Ruffa, the RICO defendant. *See, Order* at 24.

Accordingly, Ruffa's motion to dismiss the Seventh claim, for a violation of RICO Section 1962(c), and its Colorado analog, the Twenty–Fourth claim, is DENIED.

### G. The Claim Against Ruffa for Common Law Fraud

Ruffa moves to dismiss the fourteenth claim, for common law fraud, on the grounds that plaintiffs have not satisfied the specificity requirement of Rule 9(b). As the Court stated in the October Order:

> These allegations put defendants on notice that it is the misrepresentations and omissions of the Memorandum and of oral discussions with plaintiffs, upon which plaintiffs rely. Plaintiffs allegations satisfy Fed.R.Civ.P. 9(b) ...

*Order* at 5.

The allegations put defendant Ruffa on notice as well. Plaintiffs allege that Ruffa, along with the other defendants engaged in a "common course of conduct including preparation of offering materials and the issuance of legal opinions which were, inter alia, false, misleading and calculated to defraud Plaintiffs." *Fourth Amended Complaint* at ¶ 5. Paragraphs 44–72 detail the misrepresentations.

In sum, plaintiffs sufficiently put Ruffa on notice of the allegations against them to allow Ruffa to prepare an adequate answer. This meets the requirements of Rule 9(b). *See, Wool v. Tandem Computers, supra,* 818 F.2d at 1439. Accordingly, Ruffa's motion to dismiss the Fourteenth Claim, for common law fraud, is DENIED.

## VI.

### HORNE, NADLER & CO.

Horne, Nadler & Co. ("Horne"), an accounting firm, prepared financial projections which were attached to the Memorandum. Horne moves to dismiss the California plaintiffs' thirteenth claim, for a violation of California Corporations Code § 25504.2.

Section 25504.2 imposes liability on accountants and other professionals who give their consent to being named in any prospectus or offering circular that contains material misrepresentations or omissions and is distributed in connection with the sale of securities. The plaintiff asserting such liability must have acquired the security in reliance on the omission or misrepresentation.

Horne prepared income projections contained in the Offering Memorandum. Plaintiffs allege that these projections contained untrue statements and inflated projections. They further allege that Horne knew of the falsity of the projections because of its partners' longstanding involvement with Rexplore.

Defendants argue that the claim is time-barred. California Corporations Code § 25506.1 provides that any action for a violation of Section 25504.2 must be brought within one year after discovery of the facts constituting the violation, or after such discovery should have been made by the exercise of reasonable diligence.

Defendants contend that the limitations period began to run at the latest when plaintiffs contacted their attorney in December, 1985. Plaintiffs filed the original *Noble* complaint in March of 1986, but failed to name Horne as a defendant until the third amended complaint, filed on April 3, 1987.

 Since plaintiffs contacted attorneys *precisely* because the projections Horne prepared were not forthcoming, and since the Offering Memorandum named Horne as the accounting firm, plaintiffs, through due diligence, should have been able to discover the facts giving rise to this cause of action in time to include this cause of action against Horne in the original Complaint, filed in March, 1986. Even if the time of discovery were as late as December, 1985, when plaintiffs first consulted an attorney, this claim is time-barred.

Accordingly, Horne's motion to dismiss the thirteenth claim is GRANTED. This

claim is DISMISSED with prejudice, as time-barred.

## VII.

### MUTUAL FIRE AND FORUM

In October 1987, this Court dismissed all federal claims against these two surety defendants, holding that "the allegations of the Complaint demonstrate only that ... Forum, and Mutual Fire conducted routine, ordinary, business activities in providing services needed by Rexplore to finalize the sales transactions." *Order*, at 15.

However, the Court exercised its pendent jurisdiction over the state law claims asserted against Mutual Fire and Forum. The Court did not, at that time, examine the sufficiency of plaintiffs' allegations. At this time, upon an examination of these state law allegations against Mutual Fire and Forum, this Court GRANTS these two defendants' motions to dismiss the claims for breach of fiduciary duty and negligence. This Court declines to exercise pendent jurisdiction over the one remaining claim, the Twenty–First Claim, for a declaration pursuant to California Commercial Code § 3302 that Barclays is not a holder in due course.

### A. The Claim for Breach of Fiduciary Duty: the Fifteenth Claim

Plaintiffs have not stated any facts which would give rise to a fiduciary relationship between the sureties and plaintiffs. Plaintiffs urge this Court to analogize their relationship with Forum and Mutual Fire to that of an insured and an insurer, which under certain circumstances, may be characterized as a fiduciary relationship. *See, Knobloch v. Royal Globe Ins. Co.,* 46 A.D.2d 278, 362 N.Y.S.2d 492 (1974).

However, courts have generally rejected such an analogy.[3] Indeed, a surety's obligations are generally limited to those it undertakes in the bond. *Granite Computer Leasing Corp. v. Travelers Indem. Co.,* 582 F.Supp. 1279, 1281 (S.D.N.Y.), *vacated*

*on other grounds,* 751 F.2d 543 (2d Cir. 1984).

By issuing the bonds, the only duty undertaken by Forum and Mutual Fire was the obligation to pay Barclays in the event one or more of the plaintiffs defaulted. The sureties have fulfilled this obligation, amounting to a total of over $3,000,000.

■■■ Finally, plaintiffs rely on the general principle that a fiduciary relationship exists whenever trust and confidence are reposed by one person in the other. *See, e.g., Nicholson v. Rose,* 106 Cal.App.3d 457, 462, 165 Cal.Rptr. 156 (1980). However, no face-to-face contact occurred and no special trust and confidence developed between plaintiffs and the sureties.

Indeed, plaintiffs' only contact with the sureties was the payment of a premium to induce Forum and Mutual Fire to issue the bonds. Such a arms-length relationship does not give rise to a fiduciary duty. *See, e.g., Umbaugh Pole Bldg. Co. v. Scott,* 58 Ohio St.2d 282, 390 N.E.2d 320 (1979).

For these reasons, the Fifteenth Claim, for a breach of fiduciary duty, is DISMISSED with prejudice as to Forum and Mutual Fire.

### B. The Negligence Claim: the Seventeenth Claim

■■■ To state a claim based on negligence, a plaintiff must first demonstrate that a defendant owes him a duty of care. *Prosser & Keeton on Torts,* § 30 at 164 (5th Ed.1984). Even though a defendant may have acted negligently, if he owes no duty to plaintiff, he may not be held liable. *Livingston v. Gribetz,* 549 F.Supp. 238, 242 (S.D.N.Y.1982).

Plaintiffs allege that the sureties "had a duty to plaintiffs to act with the ordinary care of reasonable persons with respect to ... the providing of suitable financing arrangements for the Partnership and for plaintiffs." *Noble Fourth Amended Complaint* at ¶ 190.

---

**3.** This is true of California courts, as well as New York courts. *See, Anchor Casualty Compa-* *ny v. Strube,* 221 Cal.App.2d 29, 34 Cal.Rptr. 295 (1963).

Stripped to its essentials, this statement must mean that Forum and Mutual Fire owed a duty to plaintiffs to investigate Rexplore and earlier partnerships as a condition precedent to issuing the surety bonds. This statement cannot mean that the sureties should have investigated the arrangements between themselves and Barclays, for there is no allegation of a breach of that duty.

■ No case has been cited by plaintiff to stand for the proposition that a surety owes a duty to plaintiffs to conduct due diligence of the underlying business for which it issues a bond. *See, e.g., Schenectady Savings Bank v. Bartosik,* 77 Misc.2d 837, 839, 353 N.Y.S.2d 706, 708 (Sup.Ct. Schenectady Co.1974).

To impose such a far-ranging duty in every commercial suretyship arrangement would bring all lending to a standstill. If anything, the sureties, currently out more than $3,000,000, owed themselves, rather than the plaintiffs, the duty of due diligence before undertaking to provide bonds for Rexplore. *See, James v. State of New York,* 90 A.D.2d 342, 457 N.Y.S.2d 148 (4th Dept.1982), *aff'd,* 60 N.Y.2d 737, 469 N.Y. S.2d 695, 457 N.E.2d 802 (1983).

Accordingly, the Eighteenth Claim asserted against Mutual Fire and Forum, for negligence, is DISMISSED with prejudice.

### C. The Holder in Due Course Claim: the Twenty–First Claim

When this Court previously decided to exercise its pendent jurisdiction and retain jurisdiction over the state law claims against Forum and Mutual Fire, substantive claims remained alive based on negligence and breach of fiduciary duty.

At this time, given that no substantive claim remains against these two defendants, this Court declines to exercise its pendent jurisdiction over the claim for a declaratory judgment under the California Commercial Code.

Accordingly, this claim is DISMISSED as to Mutual Fire and Forum, and therefore, as to Barclays.

### VIII.

### OTHER STATE CLAIMS

The state claims asserted in the other Complaints consolidated in this multi-district litigation, namely, those in the *Berry, Akazawa,* and *Kovacks* Complaints, are not addressed by this Order and are currently under submission.

### IX.

### THE MOTION FOR A MORE DEFINITE STATEMENT

The defendants seek an order under Rule 12(e) of the Federal Rules of Civil Procedure for plaintiffs to provide a more definite statement of the claims against them. The detailed information defendants seek can be obtained relatively easily through discovery. "[A] motion for a more definite statement is not a substitute for discovery." 2A, J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 12.18 at 12–141 to 12–143 (2d ed. 1986). This Court DENIES defendants' motion for a more definite statement.

IT IS SO ORDERED.